[Nos. 16691-1-III; 16867-1-III.   Division Three.   April 27, 1999.]

JACK BOWCUTT, ET AL., *Appellants*, v. DELTA NORTH STAR CORPORATION, ET AL., *Defendants*, PAUL RAILTON CABBELL, ET AL., *Respondents*.

---

[17]92 Wn.2d at 26.

*David P. Boswell*, for appellants.

*Murphy, Bantz & Bury, P.S.*, by *John F. Bury* and *Steven Schneider*, for respondents.

SWEENEY, J. — The Deeds of Trust Act (RCW 61.24) requires, as a condition of restraining or enjoining a nonjudicial foreclosure, that the debtor "pay to the clerk of the court the sums that would be due on the obligation secured by the deed of trust if the deed of trust was not being foreclosed[.]" RCW 61.24.130(1). But Washington's Criminal Profiteering Act (RCW 9A.82) authorizes a superior court to restrain or enjoin "a pattern of criminal profiteering or a violation of [the act]" by court order which may include "the acceptance of satisfactory performance bonds . . . ." RCW 9A.82.100(2), (3).

In this criminal conspiracy civil suit, the court required the homeowners to post a bond pursuant to RCW 61.24.130 as a condition of enjoining a nonjudicial foreclosure.

The first question before us is whether the remedy of injunctive relief under Washington's Criminal Profiteering Act is available only to the attorney general or the prosecuting attorney, but not private litigants. If the remedy is available to private litigants, the next question is whether the protections afforded trustees by RCW 61.24.130 of the Deeds of Trust Act apply when an injunction is sought based on criminal profiteering.

We conclude first that the equitable remedy of injunction is not limited to the attorney general or the prosecuting attorney. We also conclude that the court may restrain the nonjudicial foreclosure under the criminal profiteering statute without the bond required by the Deeds of Trust Act. The court therefore erred by conditioning the homeowners' injunctive relief on payment of a bond equal to the obligation secured by the deed of trust. We therefore reverse and remand.

## FACTS

<u>Parties</u>: Jack Bowcutt, Leo E. Murphy, Ingve G. Turn-

quist and Elmer Ivar Turnquist (homeowners) sued Paul Railton Cabbell, Headhunters, and The Headhunters Defined Benefit Pension Plan (hereafter Cabbell), Delta North Star Corporation, Mark Pitts, and O'Coyne & Phillips, P.S., for criminal conspiracy based on an equity-skimming scheme.

Scheme: Cabbell does not dispute the factual sufficiency for granting a preliminary injunction based on the following alleged scheme. Mark Pitts, president of Delta North Star Corporation, sought out vulnerable homeowners with substantial equity in their homes in Washington and north Idaho. Mr. Pitts is a convicted felon and bankrupt to whom no reputable lender would advance funds. Mr. Pitts arranged to buy homes by persuading the homeowners to finance part of the purchase price by a deed of trust. Cabbell financed the balance. The homeowner then took a second trust deed, inferior to Cabbell's priority first trust deed. Cabbell loaned Mr. Pitts substantially more than the balance of the purchase price. And Mr. Pitts walked away with these funds at closing. The Cabbell loan was at 25 percent interest; the entire principal was due as a balloon payment after one year. At that time, the loan might be refinanced, but only by paying the accumulated interest. Mr. Pitts then defaulted, and Cabbell foreclosed. Cabbell's priority interest exhausted the value of the property. So the homeowners were left with nothing.

Injunctions: The Trustee's foreclosure sale was set for May 16, 1997. On May 8, the homeowners sued Cabbell and Mr. Pitts. They alleged criminal profiteering and requested a preliminary injunction to halt the foreclosure proceedings. The summons and complaint were served on Friday, May 9. A hearing on the homeowners' motion for preliminary injunction pendente lite was set for May 15. Cabbell appeared and filed a memorandum in opposition. The homeowners' counsel told opposing counsel outside the courtroom that he would seek a temporary restraining order (TRO) if the preliminary injunction could not be heard.

The preliminary injunction motion could not be heard as scheduled. A court commissioner therefore issued an ex parte TRO based on the imminence of the impending trustee's sale. The TRO required the homeowners to post a $50,000 bond. A hearing was set for May 29, to show cause why the TRO should not become a preliminary injunction. Cabbell's counsel asserted he had no prior notice of the TRO and only discovered on May 27 that the TRO had issued. The TRO dissolved by its terms on May 29.

The Trustee voluntarily continued the foreclosure until June 5. The motion on preliminary injunction was finally heard June 5. Judge Clarke granted the preliminary injunction, but required the homeowners to deposit the full amount in default including periodic interest due, pursuant to RCW 61.24.130(1).

Cabbell went back to court and obtained an order from Judge Cozza that there was no lawful basis for the TRO. The court also awarded Cabbell $427.00 attorney fees and $649.36 interest for resisting it.

The homeowners moved for discretionary review of Judge Clarke's order imposing the bond requirements of RCW 61.24.130 to the preliminary injunction, and Judge Cozza's award of attorney fees and interest to Cabbell. We accepted review.

## DISCUSSION

I. Does Washington's Criminal Profiteering Act (RCW 9A.82) provide a private civil action for equitable relief?

■ Standard of Review: Interpretation of a statute under which an injunction has been granted is a question of law which we review de novo. *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1079 (9th Cir. 1986), *cert. denied*, 479 U.S. 1103 (1987).

■ Washington's "Little RICO" Statute: The Washington criminal profiteering statute is patterned after the federal Racketeer Influenced and Corrupt Organizations

Act (RICO); it is referred to as a "little RICO." *Winchester v. Stein*, 135 Wn.2d 835, 848, 959 P.2d 1077 (1998). Both the federal and state laws provide for a private right of action for damages. 18 U.S.C. § 1964(c); RCW 9A.82.100(1)(a). Both provide for intervention by the attorney general and grant the State the right to seek injunctions. 18 U.S.C. § 1964(b); RCW 9A.82.100(1)(b). Both give the courts the power to restrain and prevent violations by issuing "appropriate orders." 18 U.S.C. § 1964(a); RCW 9A.82.100(2). Federal case law in this area is therefore helpful. *Winchester,* 135 Wn.2d at 848.

In enacting federal RICO, the United States Congress affirmatively rejected an amendment that would have allowed private injunctive relief. The following year Congress again rejected an amendment to create private injunctive relief. *Wollersheim*, 796 F.2d at 1085; *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985). Accordingly, federal courts limit the RICO remedy for private plaintiffs to damages, and provide equitable relief only to the government. *Wollersheim*, 796 F.2d at 1088.

The Ninth Circuit of the United States Court of Appeals has expressed the view that "on balance, it may well have been desirable for Congress to have extended to private parties the right to injunctive relief . . . ." *Wollersheim*, 796 F.2d at 1089. Because the preventive effect of injunctive relief is often a more effective weapon against crime, as well as a more just remedy than damages, both public and private benefits of the legislation are enhanced by allowing individuals to seek equitable remedies. The court states that precluding resort to equity by private plaintiffs "hamstrings" the statute's effect. *Wollersheim*, 796 F.2d at 1088-89. Federal courts are nevertheless constrained by the overwhelming evidence that the United States Congress chose not to do this.

██ Washington's Legislature has not, however, so constrained Washington state courts. We can find no history that the question of private injunctive relief was

separately discussed. There is only the language of the statute. And a number of factors militate in favor of construing Washington's statute as preserving the equitable remedy of injunction.

*Statutory Language*: The language of RCW 9A.82 is not identical to RICO. The language of Washington's criminal profiteering statute suggests that the Legislature contemplated that private plaintiffs would not be deprived of the usual equitable remedies.

First, the Washington law makes it harder to sue by defining both criminal profiteering and "pattern of conduct" more narrowly than its federal counterpart. *Winchester*, 135 Wn.2d at 848 n.3. Our state act requires three crimes in five years to show a pattern of criminal profiteering, compared to only two predicate crimes committed over ten years to show a pattern of racketeering activity under the federal act.

Second, the language of RCW 9A.82.100 does not limit equitable injunctions to the attorney general. We base this conclusion on the following analysis:

RCW 9A.82.100(1)(b) empowers the attorney general *either* (i) to sue on behalf of individuals or the State for damages, *or* (ii) to prevent or restrain criminal conduct. Note that this says the attorney general may either sue on behalf of individuals or restrain, presumably on its own account. It does not say the attorney general may either sue for damages on behalf of individuals or restrain on behalf of individuals.

RCW 9A.82.100(2) recognizes the court's jurisdiction "to prevent, restrain, and remedy a pattern of criminal profiteering . . . ." This is a general grant of superior court jurisdiction to provide equitable relief by issuing "appropriate orders."

RCW 9A.82.100(3) then provides that the orders discussed in subsection (2) may include injunctions pursuant to Title 7 RCW, which provides for equitable relief for private plaintiffs. Significantly, this specific reference to Title 7 does not follow or refer to the specific grant of

injunctive relief to the State in subsection (1). Instead it follows, and expressly applies to, the general grant of injunctive power to the court in subsection (2).

These differences suggest a legislative intent to provide injunctive relief to private plaintiffs in Washington.

*Washington Constitution*: This view is bolstered by state constitution considerations.

■ ■ The superior court has original jurisdiction in all cases in equity. CONST. art. IV, § 6. Its inherent powers encompass all the powers of the English chancery court. *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 415, 63 P.2d 397 (1936). The Legislature is constitutionally prohibited from abrogating or restricting these equitable powers.

The writ of injunction is the "strong arm of equity." So any legislation that diminishes the superior court's constitutional injunctive powers is void. *State v. Werner*, 129 Wn.2d 485, 496, 918 P.2d 916 (1996) (citing *Blanchard*, 188 Wash. at 415). And we narrowly read exceptions to superior court jurisdiction. *Orwick v. City of Seattle*, 103 Wn.2d 249, 251, 692 P.2d 793 (1984). Unless the Legislature clearly indicates its intention to limit jurisdiction, statutes should be construed as imposing no limitation. *In re Marriage of Major*, 71 Wn. App. 531, 534, 859 P.2d 1262 (1993).

The criminal profiteering statute contains no such limiting language. We therefore interpret RCW 9A.82 as permitting private plaintiffs to obtain equitable relief, including injunctive relief.

II. Do the protections afforded a trustee's sale under RCW 61.24.130 apply when a request for injunction alleges equity skimming and criminal profiteering?

Relevant Facts: Judge Clarke granted the homeowners a preliminary injunction, but did so pursuant to the Deeds of Trust Act, RCW 61.24, which requires the underlying obligation be kept current by payments to the court during its pendency. RCW 61.24.130(1). The court concluded it could not bypass this condition without a judicial determination of criminal activity by Cabbell.

■ This is an issue of first impression. The deeds of trust and the criminal profiteering statutes conflict. The homeowners are unable to pay the entire amount in default as required by the Deeds of Trust Act. But they were able to meet the general injunction requirement to deposit an amount deemed by the court sufficient to secure the interests of the adverse party. RCW 7.40.080. We must harmonize them if possible. *Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 572, 731 P.2d 497 (1987), *overruled on other grounds by Phillips v. City of Seattle*, 111 Wn.2d 903, 766 P.2d 1099 (1989).

■ Standard of Review: The standard of review for grant or denial of a preliminary injunction is abuse of discretion. *Rabon v. City of Seattle*, 135 Wn.2d 278, 284, 957 P.2d 621 (1998). Failure to exercise discretion is an abuse of discretion. *State v. Pettitt*, 93 Wn.2d 288, 296, 609 P.2d 1364 (1980).

■ Cabbell correctly contends that Washington's criminal profiteering scheme does not create an exception to the Deeds of Trust Act for enjoining a trustee's sale pursuant to a claim of equity skimming. However, neither does RCW 9A.82 erode the courts' broad equitable powers to protect people from equity skimming.

Remedies involving fraud are within the exclusive equitable jurisdiction of the court. 15 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: TRIAL PRACTICE CIVIL § 646(2), at 467 (5th ed. 1996). So the separation of powers considerations discussed above are equally germane here.

The problem here is that fraud was alleged, but not yet proved. But that is always the case with a preliminary injunction. Before issuing a preliminary injunction, the court must establish the likelihood of the homeowners ultimately prevailing on the merits. *Tyler Pipe Indus., Inc. v. Department of Revenue*, 96 Wn.2d 785, 793, 638 P.2d 1213 (1982). Here, the court apparently believed the homeowners were likely to prevail. Injunctions are within the equitable powers of the court. So the court here should have examined the equities, the relative interests of the parties and the interests of the public. *Rabon*, 135 Wn.2d at 284.

The United States Supreme Court construes RICO broadly to effect its remedial purpose. *Sedima,* 473 U.S. at 498. A party states a RICO claim by alleging the requisite elements. *Id.* at 497.

■ Here, the court granted the injunction pursuant to RCW 61.24.130, the purpose of which is to protect good faith lenders. The court should have granted the injunction under RCW 9A.82. Its purpose is to protect homeowners. The court would then proceed under the injunction power of Title 7 RCW, which places the terms of the injunction squarely within the sound discretion of the court. RCW 7.40.080.

In shaping the reach or scope of injunctive relief under RCW 9A.82, the superior court is required to provide for the protection of bona fide interests in property of innocent persons. RCW 9A.82.100(3). Principles of equity and the public interest considerations required the court to examine the appropriate terms of the injunction in light of the circumstances. The court abused its discretion by failing to exercise discretion.

III. Is Cabbell entitled to attorney fees for resisting the TRO?

■ Standard of Review: The TRO was granted pursuant to the court's interpretation of CR 65(b). The application of court rules to a particular set of facts is a question of law which we review de novo. *Buckner, Inc. v. Berkey Irrigation Supply,* 89 Wn. App. 906, 911, 951 P.2d 338, *review denied,* 136 Wn.2d 1020 (1998).

■ Attorney Fees: Attorney fees are recoverable as a cost of dissolving a wrongfully issued temporary injunction or restraining order. *Alderwood Assocs. v. Washington Env'tl. Council,* 96 Wn.2d 230, 247, 635 P.2d 108 (1981). However, the temporary injunction at issue here was not wrongfully issued. CR 65(b) empowers the court to grant a TRO without notice if immediate and irreparable loss will result before the adverse party can be heard. RCW 61.24.130 cannot divest the court of this constitutionally-

derived equitable power. *Werner*, 129 Wn.2d at 496 (citing *Blanchard*, 188 Wash. at 415).

Here, Cabbell was on notice that the homeowners were seeking to enjoin the trustee's sale. Because the court acted within its inherent equitable power to grant the TRO under terms it deemed just in light of the circumstances, the order awarding Cabbell fees was erroneous.

IV. Does the equity skimming statute, RCW 61.34, apply to lenders on a sufficient showing of conspiracy with the purchaser?

▮▮ The question whether lender Cabbell conspired with purchaser Mr. Pitts in a single criminal entity is a question of fact to be decided by the pending lawsuit. Whether Cabbell's dealings with Mr. Pitts comprised a single criminal enterprise, subject to sanctions under either the equity skimming statute or the criminal profiteering act, is a question of law. We are therefore required to resolve it in reviewing the propriety of the injunction. *Rabon*, 135 Wn.2d at 286.

The criminal profiteering statute recognizes an "enterprise" as a group of individuals associated in fact, even though not a legal entity. RCW 9A.82.010(12). The equity skimming statute recognizes a "person" as an unincorporated association. RCW 61.34.020(3).

If the homeowners establish Cabbell and Mr. Pitts as a criminal enterprise, they may assert their claims against Cabbell.

### HOLDING

We reverse and remand for a new hearing on the injunction pendente lite. We further reverse the order awarding Cabbell fees and interest for litigating the TRO.

SCHULTHEIS, C.J., and KURTZ, J., concur.

Reconsideration denied June 10, 1999.