112

[No. 28889-7-III. Division Three. November 29, 2011.]

*In the Matter of the Detention of* CALVIN J. MINES.

114

116

*David L. Donnan, Elaine L. Winters*, and *Susan F. Wilk* (of *Washington Appellate Project*), for appellant.

*Robert M. McKenna, Attorney General*, and *Malcolm S. Ross, Assistant*, for respondent.

¶1 Brown, J. — Calvin J. Mines appeals his civil commitment as a sexually violent predator (SVP) under RCW 71.09.060. Mr. Mines contends the trial court erred in (1) interpreting RCW 71.09.020 to allow proof of sexual motivation at the SVP trial, (2) failing to bifurcate the trial, (3) admitting original charging documents for his crimes, and (4) failing to provide his proposed limiting instruction. We disagree and affirm.

## FACTS

¶2 After completing his 1994 sentence for third degree rape, Mr. Mines spent over three years in the community. In 2001, Mr. Mines assaulted a man who tried to intervene in a discussion Mr. Mines was having with his girl friend and assaulted two police officers who responded to the scene; as a result, he was convicted of two counts of third degree assault and returned to prison. In late 2005, while Mr. Mines was still in custody for these offenses, the Department of Corrections (DOC) referred Mr. Mines for evaluation under Washington's SVP law. Dr. Harry Goldberg, the expert retained by the State, concluded that Mr. Mines met the criteria for commitment as an SVP. The DOC had previously evaluated Mr. Mines under the SVP law but determined that he did not meet the statutory criteria for commitment.

¶3 In March 2006, the State petitioned under chapter 71.09 RCW and filed a probable-cause certification alleging Mr. Mines is an SVP. Specifically, the State alleged Mr. Mines's prior conviction for assault in the first degree from 1970 qualified as a sexually violent offense. The State noted assault in the first degree was not "specifically enumerated" as a sexually violent offense in RCW 71.09.020 but asserted that at trial, it would introduce evidence to permit a finding that the crime had been sexually motivated. Clerk's Papers (CP) at 4. The State listed among "other sexual offenses and misconduct" Mr. Mines's 1990 conviction for unlawful imprisonment, 1991 conviction for unlawful imprisonment, and 1994 conviction for rape in the third degree. CP at 5-7. The State asserted a sexual assault alleged to have been committed by Mr. Mines against another prison inmate in 2003 qualified as a recent overt act. After finding probable cause in July 2006, the trial court ordered Mr. Mines be detained and evaluated pending trial under RCW 71.09.040(4).

¶4 Before trial, Mr. Mines unsuccessfully moved to dismiss the petition, partly contending his conviction for assault in the first degree was not a sexually violent offense. Mr. Mines unsuccessfully moved to bifurcate for a preliminary trial on the question of whether he had committed a recent overt act. In its ruling denying bifurcation, the court acknowledged the risk of prejudice.

¶5 At trial, the 1970 first degree assault victim related Mr. Mines punched her in the face, threatened her with a knife, choked her, attempted to vaginally rape her, and ultimately forced her to orally copulate him. Mr. Mines was charged with first degree assault and sodomy. The sodomy charge was dismissed; he pleaded guilty to assault and was convicted on February 5, 1970. The trial court concurrently entered the following finding of fact: "That the Defendant, CALVIN MINES, on the 17th day of November, 1969, with intent to rape, did assault a female child with use of a deadly weapon, to-wit: one hunting knife with 5-inch blade." Ex. 4. Mr. Mines's expert witness, Dr. Luis Rosell, testified Mr. Mines admitted forcing his penis into the victim's mouth.

¶6 The 1990 unlawful imprisonment victim did not testify at trial; the State, over objection, introduced the original charging documents showing second degree rape by forcible compulsion. Mr. Mines pleaded guilty to an amended charge of unlawful imprisonment. Mr. Mines's 1991 unlawful imprisonment victim testified, giving graphic details of a violent sexual encounter with Mr. Mines that led to third degree rape of a child charges and the eventual plea to unlawful imprisonment; the court admitted the original charging documents. Mr. Mines's 1994 third degree rape victim related the graphic details of her sexually violent encounter with him.

¶7 Regarding the recent overt act, J.B. testified he was incarcerated with Mr. Mines in 2003. Mr. B. related Mr. Mines threatened to severely hurt him or kill him unless he performed sex acts with him; Mr. B. complied. Other wit-

nesses related forced, violent sexual assaults by Mr. Mines while in jail or prison. The State questioned Mr. Mines's expert witness regarding Mr. Mines's alleged sexual assaults of other inmates during his confinement. Mr. Mines's counsel expressed concern that the jury would consider this testimony for propensity to commit the alleged recent overt act and proposed a limiting instruction:

> Certain evidence has been admitted in this case for only a limited purpose. This evidence consists of testimony by [M.E., B.B., and J.C.] and may be considered by you only for the purposes of proof of mental abnormality and proof of current dangerousness. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

CP at 951. While agreeing it would be inappropriate to argue Mr. Mines had a propensity to commit sexual offenses to prove the recent overt act, the State successfully objected. Further details are given in our Instructional Error analysis.

¶8 The State's expert and Mr. Mines's expert are both clinical psychologists specializing in forensic psychology. Both doctors testified regarding Mr. Mines's likelihood to reoffend. Dr. Goldberg diagnosed Mr. Mines with a rape disorder (paraphilia not otherwise specified), antisocial personality disorder, and determined that Mr. Mines is a psychopath, concluding Mr. Mines's mental disorders made him likely to engage in predatory acts of sexual violence if released from custody. Dr. Rosell diagnosed Mr. Mines solely with an antisocial personality disorder and did not believe that condition made him likely to reoffend.

¶9 The jury found Mr. Mines was an SVP under chapter 71.09 RCW. He appealed.

## ANALYSIS

### A. RCW 71.09.020

¶10 The issue is whether the trial court erred in interpreting RCW 71.09.020 to allow proof of sexual motivation at the SVP trial. Mr. Mines contends the statute is ambiguous or, alternatively, it violates constitutional due process and equal protection.

¶11 We review questions of statutory interpretation de novo. *Hanson Indus., Inc. v. Kutschkau*, 158 Wn. App. 278, 287, 239 P.3d 367 (2010), *review denied*, 171 Wn.2d 1011 (2011). When interpreting a statute, a court's fundamental objective is to ascertain and carry out the legislature's intent. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). Plain meaning is derived "from the ordinary meaning of the language at issue, as well as from the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Jacobs*, 154 Wn.2d at 600.

¶12 RCW 71.09.030 partly provides that a petition may be filed alleging that a person is an SVP and stating sufficient facts to support such allegation when it appears that "a person who at any time previously has been convicted of a sexually violent offense and has since been released from total confinement and has committed a recent overt act."

¶13 Former RCW 71.09.020(15) (2003), *recodified as* RCW 71.09.020(17), partly provides:

"Sexually violent offense" means an act committed on, before, or after July 1, 1990, that is . . . (c) an act of . . . assault in the first or second degree . . . which act, either at the time of sentencing for the offense or subsequently during civil commit-

ment proceedings pursuant to this chapter, has been determined beyond a reasonable doubt to have been sexually motivated.

Thus, an SVP petition may be filed for a person released from total confinement who has committed a recent overt act if it appears the person has previously been convicted of sexually motivated first degree assault. Sexual motivation is explicitly permitted to be subsequently determined during the SVP trial. Accordingly, the statute is plain on its face and we must reject Mr. Mines's ambiguity contention without further analysis.

¶14 Alternatively, Mr. Mines contends his right to equal protection has been violated in the statutorily-authorized civil commitment proceedings. The equal protection clauses of both the federal and Washington Constitutions require "persons similarly situated with respect to the legitimate purpose of the law must receive like treatment." *State v. Coria*, 120 Wn.2d 156, 169, 839 P.2d 890 (1992) (citing CONST. art. I, § 12; U.S. CONST. amend. XIV). Washington courts use the rational basis test for reviewing involuntary commitment statutes. *In re Det. of Turay*, 139 Wn.2d 379, 410, 986 P.2d 790 (1999). Under this test, "a legislative classification will be upheld unless it rests on grounds wholly irrelevant to the achievement of legitimate state objectives." *State v. Thorne*, 129 Wn.2d 736, 771, 921 P.2d 514 (1996). "The burden is on the party challenging the classification to show that it is purely arbitrary." *Id.*

¶15 Mr. Mines's argument fails because anyone similarly situated to him would be treated the same. Sexual motivation is a statutory aggravating factor that, if proved at a criminal trial, can support an exceptional sentence. *State v. Thomas*, 138 Wn.2d 630, 632, 980 P.2d 1275 (1999) (citing former RCW 9.94A.390(2)(f), *recodified as* RCW 9.94A.535 (LAWS OF 2001, ch. 10, § 6)); *see* former RCW 9.94A.030(42) (2005). Criminal prosecutors are required to file a special allegation of sexual motivation where there is evidence such that a reasonable and objective fact finder would be justified

in making the finding. *Thomas*, 138 Wn.2d at 632 (quoting former RCW 9.94A.127(1) (1999), *recodified as* RCW 9.94A-.835(1) (LAWS OF 2001, ch. 10, § 6)). The aggravator and the requirement that prosecutors allege it, however, were not adopted in Washington until 1990. *See* LAWS OF 1990, ch. 3, §§ 601, 602. When the legislature adopted the community protection act of 1990, chapter 18.155 RCW, which included the SVP law, it specifically provided that the new aggravator would apply retrospectively for purposes of proving predicate offenses under chapter 71.09 RCW.

¶16 Regarding Mr. Mines's 1970 conviction for first degree assault, the sentencing court found the crime to be sexually motivated. Its written findings include: Mr. Mines "on the 17th day of November, 1969, with intent to rape, did assault a female child with use of a deadly weapon." Ex. 4. But even as Mr. Mines himself points out, the court's finding is insufficient for commitment under the current SVP law because under procedures used at the time, " 'it was understood the sentencing authority would consider surrounding circumstances and uncharged acts in setting a term of incarceration,' " but there is no indication the finding was made beyond a reasonable doubt. Br. of Appellant at 16 (quoting *State v. Shephard*, 53 Wn. App. 194, 198, 766 P.2d 467 (1988)).

¶17 Thus, individuals similarly situated to Mr. Mines are those with a predicate conviction obtained prior to adoption of the sexual motivation aggravator and, therefore, lacking such a finding beyond a reasonable doubt. Those individuals would face the same procedures as Mr. Mines at an SVP trial. Even so, he argues he is being treated differently than those who faced such allegations at an earlier criminal proceeding. He reasons no rational basis exists to distinguish an SVP respondent "who was convicted of a sexually violent offense through the criminal process, with its attendant constitutional protections, from [one] who is newly confronted in civil commitment proceedings with a sexual motivation allegation." Br. of Appellant at 25.

¶18 The appellant in *In re Detention of Abolafya*, 114 Wn. App. 137, 56 P.3d 608 (2002) made an identical argument. In that case, the State alleged at an SVP trial that Mr. Abolafya's predicate offense of residential burglary was sexually motivated. *Id.* at 142-43. Division One of this court rejected Mr. Abolafya's argument that he was similarly situated to SVP respondents who had faced allegations of sexual motivation at a criminal trial. *Id.* at 146. The court reasoned:

> [Mr.] Abolafya is now facing only civil commitment, not criminal sanctions. Criminal defendants face increased prison sentences or periods of probation for findings of sexual motivation. Constitutionally they are afforded greater protections than civil respondents. [Mr.] Abolafya is not similarly situated to criminal defendants facing an allegation of sexual motivation.

*Id.* Mr. Mines attempts to distinguish *Abolafya* by arguing Division One "falsely characterized [Mr.] Abolafya's comparison." Br. of Appellant at 24-25. He argues Division One merely compared a person facing civil commitment to a criminal defendant. The *Abolafya* court characterized the different classes:

> The first class consists of *respondents* who received the full procedural protections of a criminal trial on the predicate offense and special allegation of sexual motivation. The second class consists of *respondents* who are forced to defend against a special allegation of sexual motivation at a civil trial during which they have no right to remain silent and during which there will be presentation of evidence that would have been inadmissible at the criminal trial.

*Abolafya*, 114 Wn. App. at 145 (emphasis added). We reason Division One accurately compared SVP respondents. The court correctly determined Mr. Abolafya was not similarly situated to SVP respondents who received higher protections at a time when they were facing increased criminal penalties. *Id.* at 146. Applying the equal protection test, the *Abolafya* court reasoned the legislature had a rational basis for treating the two groups differently:

[T]he goals of civil commitment are treatment for the respondent and protection of potential victims. *In re Pers. Restraint of Young*, 122 Wn.2d 1, 51-52, 857 P.2d 989 (1993). For instance, these goals are not served by the Fifth Amendment right to silence afforded to criminal defendants. *In re Young*, 122 Wn.2d at 51-52. Although the Fifth Amendment is a valid protection in criminal trials, that protection has been deemed an impediment to the treatment goal of chapter 71.09 RCW. *In re Young*, 122 Wn.2d at 51-52.

*Id.* at 146-47. We agree and reject Mr. Mines's equal protection contentions.

¶19 Lastly, Mr. Mines alternatively raises a general due process claim against the sexual motivation procedure. He argues the statute, as interpreted by *Abolafya*, would create an "open season" for prosecutors to file SVP petitions against respondents where the State could not prove sexual motivation under the criminal laws, permitting the State a "second bite at the apple." Br. of Appellant at 25. This amounts to a facial challenge to the statute. To facially challenge the statute, Mr. Mines must demonstrate that there is no set of circumstances in which the statute can be constitutionally applied. *City of Redmond v. Moore*, 151 Wn.2d 664, 668-69, 91 P.3d 875 (2004). Mr. Mines fails; we conclude the statute was constitutionally applied.

### B. Bifurcation

¶20 The issue is whether the trial court erred in denying Mr. Mines's bifurcation motion.

¶21 Under CR 42(b), the court has authority to bifurcate the trial. A court's decision whether to bifurcate a trial is reviewed for an abuse of discretion. *Myers v. Boeing Co.*, 115 Wn.2d 123, 140, 794 P.2d 1272 (1990). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable reasons. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006) (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)). A

decision is manifestly unreasonable if it takes a view no reasonable person would take. *Id.* (quoting *Rohrich*, 149 Wn.2d at 654). Also, as Mr. Mines points out, "[f]ailure to exercise discretion is an abuse of discretion." *Bowcutt v. Delta N. Star Corp.*, 95 Wn. App. 311, 320, 976 P.2d 643 (1999).

 ¶22 First, Mr. Mines contends the failure to bifurcate was an abuse of discretion. The parties agree the court had authority to bifurcate the recent overt act determination, but Mr. Mines argues the trial court "abdicated this authority by predicating any action on the presentation of 'precedent.'" Br. of Appellant at 29. Although the court did explain in its written ruling that "there is apparently no authority or precedent for[ ] bifurcation of the [recent overt act] element from the other issues of an SVP trial," it continued, "[t]he reason for the lack of a precedent is apparent when examining . . . the definition of [a "recent overt act"]." CP at 278.

¶23 At the time the State filed the petition in 2006, a "recent overt act" was defined as

> any act or threat that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act.

Former RCW 71.09.020(10), *recodified as* RCW 71.09.020(12). In its ruling, the court reasoned:

> It is obvious from this definition that proof of [a recent overt act] for purposes of the statute is not simply proof of the act or threat itself, but rather the act is considered in the context of the person's criminal, sexual and mental health history.

CP at 279. The court exercised discretion in explaining the same witnesses would testify in a separate trial on the recent overt act as in the SVP trial. Indeed, bifurcation would have required two nearly identical, lengthy trials. Due process requires the State prove the "current dangerousness" of an SVP respondent. *In re Det. of Albrecht*, 147

Wn.2d 1, 10, 51 P.3d 73 (2002). To prove dangerousness after a respondent has been released from a sexually violent offense commitment back into the community, the State was required to show that, after release, the respondent committed a recent overt act. RCW 71.09.030; *Albrecht*, 147 Wn.2d at 11. A recent overt act required knowledge of the person's criminal, sexual, and mental health history—duplicate testimony in bifurcated proceedings. In sum, the trial court did not abuse its discretion by denying Mr. Mines's bifurcation motion.

¶24 Second, Mr. Mines contends his equal protection rights were violated because he claims he is similarly situated to SVP respondents found incompetent to be tried for their predicate offense. Such respondents have the right to a bifurcated trial on the issue of whether they committed the predicate offense. RCW 71.09.060(2). Mr. Mines reasons equal protection gives him the right to a separate trial on the recent overt act.

¶25 But Mr. Mines is not similarly situated to those who were found incompetent to stand trial on their predicate offense. Unlike a person found incompetent to stand trial for his or her predicate offense, he pleaded guilty to, and was convicted of, first degree assault. He enjoyed the rights owed to the criminal defendant and waived them. *In re Det. of Stout*, 159 Wn.2d 357, 376, 150 P.3d 86 (2007). The incompetent person has not had that opportunity. For that reason, to the extent Mr. Mines has been treated differently than respondents found incompetent to stand trial for their predicate offense, a rational basis exists for doing so. RCW 71.09.060(2) provides a separate hearing for SVP respondents who have been found incompetent on whether they committed the predicate offense. Mr. Mines has provided no authority showing a respondent found incompetent to be tried for a predicate sexually violent offense would face any different procedure for proving a recent overt act. We conclude Mr. Mines fails to demonstrate an equal protection violation in his unbifurcated trial.

## C. Admitting Original Charging Documents

¶26 The issue is whether the trial court erred by violating fair trial principles in admitting the original charging documents for Mr. Mines's crimes even though he pleaded to lesser offenses.

¶27 A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *In re Det. of Coe*, 160 Wn. App. 809, 817, 250 P.3d 1056, *review granted*, 172 Wn.2d 1001 (2011).

¶28 "It is a fundamental rule of evidence that '[e]vidence which is not relevant is not admissible.' " *In re Det. of Post*, 170 Wn.2d 302, 311, 241 P.3d 1234 (2010) (alteration in original) (quoting ER 402). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Further, even relevant evidence must be excluded if its probative value is outweighed by its prejudicial effect. ER 403.

¶29 Mr. Mines first argues the informations are inadmissible as irrelevant. As he contends, it is axiomatic that the filing of a criminal information " 'is not evidence that the charge is true.' " Br. of Appellant at 38. Indeed, as Mr. Mines asserts, "The plea of not guilty is a denial of every material allegation in the indictment or information." Br. of Appellant at 38. Since Mr. Mines pleaded not guilty to the originally charged information for each of his prior convictions, the allegations in the original informations were unproved and presumptively not true. For this reason, Mr. Mines argues they were irrelevant.

¶30 But the SVP trial was not a trial on whether Mr. Mines committed those crimes as charged. Rather, it was a trial determining if Mr. Mines was an SVP. A "sexually violent predator" is

> any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality

or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility.

Former RCW 71.09.020(16), *recodified as* RCW 71.09-.020(18). Thus, the two contested charging documents were relevant to Mr. Mines's risk assessment, or his likelihood to engage in predatory acts of sexual violence if not confined in a secure facility. The State's expert explained Mr. Mines's charged sexual offenses over his lifetime were facts of direct consequence to his recidivism-risk assessment. Indeed, prior sexual history is highly probative of an individual's propensity for future sexual violence. So even unadjudicated offenses are relevant to the individual's risk to the community if not confined. *Turay*, 139 Wn.2d at 401-02; *see* RCW 71.09.020(7).

¶31 Moreover, "[e]videntiary error is grounds for reversal only if it results in prejudice." *State v. Neal*, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001). An evidentiary error is harmless unless it was reasonably probable that it changed the outcome of the trial. *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997) (quoting *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981)). The amended unlawful imprisonment informations were admitted concurrently with the original informations. Mr. Mines's counsel was able to cast doubt on the original charges by questioning the State's expert regarding the plea deals and light sentences. And, in his partially-admitted video deposition, Mr. Mines admitted he had sex with his 1990 unlawful imprisonment victim against her will, as originally charged. And, Mr. Mines claimed he had consensual sex with the 1991 15-year-old unlawful imprisonment victim, which admits the original charge since consent was impossible because of the age difference. Accordingly, Mr. Mines fails to show material.

## D. Instructional Error

¶32 The issue is whether the trial court erred by violating fair trial principles in failing to give Mr. Mines's limiting instruction.

¶33 "When evidence is proper for one purpose but inadmissible for another purpose, a limiting instruction is usually required." *In re Det. of West,* 171 Wn.2d 383, 398, 256 P.3d 302 (2011) (citing *State v. Redmond,* 150 Wn.2d 489, 78 P.3d 1001 (2003)). Upon a party's request, ER 105 requires the court to "restrict the evidence to its proper scope and instruct the jury accordingly."

¶34 Mr. Mines requested an instruction limiting the testimony of former prison inmates, who claimed to have been sexually assaulted by Mr. Mines, to issues other than propensity to commit a recent overt act. But Mr. Mines's proposed instruction would overly restrict the use of the evidence. Whether a jury instruction correctly states the relevant law is a question of law we review de novo. *State v. Linehan,* 147 Wn.2d 638, 643, 56 P.3d 542 (2002). Mr. Mines's proposed instruction is set out in the facts section above.

¶35 Though the State agreed it would be inappropriate to argue Mr. Mines had a propensity to commit sexual offenses with regard to the recent overt act, the proposed instruction limited the use of the testimony "for the purposes of proof of mental abnormality and proof of current dangerousness." CP at 951. As discussed, whether a recent overt act was committed by Mr. Mines required the jury to consider the evidence of that crime in light of his "history and mental condition." Former RCW 71.09.020(10). Thus, the jury was allowed to consider victim testimony as evidence of Mr. Mines's history, not just mental abnormality

or current dangerousness. Accordingly, Mr. Mines's proposed instruction misstated the law.

¶36 Affirmed.

KULIK, C.J., and SIDDOWAY, J., concur.

After modification, further reconsideration denied December 29, 2011.

Review denied at 173 Wn.2d 1032 (2012).