# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 77287-2-I |
| | ) | |
| | ) | |
| | ) | |
| KYLE HAMMOND, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent, | ) | FILED: March 25, 2019 |
| | ) | |

VERELLEN, J. — Hearsay that does not form the basis of an expert witness's opinion may not be admitted under ER 703. If an expert has no confidence that an otherwise inadmissible police report has anything to do with a crime admitted by a person who is the subject of a sexually violent predator (SVP) petition and the expert's opinion is the same with or without the police report, the report is not a basis for the expert's opinion for purposes of ER 703. But the improper admission of hearsay is not reversible error where, within reasonable probabilities, the outcome of the trial was not impacted. Kyle Hammond fails to establish that the improper admission of a police report impacted the outcome of his SVP trial.

Hammond also fails to establish that the refusal to give a clarifying instruction that "more probably than not" means "more than a 50 percent likelihood" precluded him from arguing his theory of the case under legally accurate instructions given by the trial court.

And sufficient evidence supports the jury verdict that Hammond is an SVP because his admissions are consistent with expert testimony connecting the manifestations of his antisocial personality disorder (ASPD), his dysfunctional coping skills, and his hypersexuality.

Therefore, we affirm.

## FACTS

Hammond grew up in "deplorable conditions" in which he and his siblings suffered "severe sexual abuse [and] physical abuse."[1]  His father raped him when he was two.  When Hammond was 10, his father encouraged him to have sex with his nine-year-old half-sister.  Around that time, Hammond had his first arrest and conviction for breaking a teacher's wrist.  When Hammond was 13, he molested his brother and sister.  At 14, he was arrested for first degree child molestation, pleaded guilty, and registered as a sex offender.

Between 18 and 20, Hammond committed and was convicted of indecent liberties, voyeurism, and failing to register as a sex offender.  He was sentenced to 84 months incarceration.  While in the sex offender treatment and assessment program at Monroe Correctional Complex, Hammond admitted he had committed a previously unknown and unadjudicated crime: raping a stranger at knifepoint.  The State petitioned to involuntarily commit Hammond to the Special Commitment Center as a sexually violent predator (SVP) pursuant to chapter 71.09 RCW.

---

[1] Report of Proceedings (RP) (July 17, 2017) at 523.

Two psychological experts testified during Hammond's civil commitment trial. Dr. Harry Goldberg testified for the State, and Dr. Amy Phenix testified for Hammond. Both experts diagnosed Hammond with a clinical personality disorder. But they disagreed about whether Hammond's particular diagnosis met the legal definition for "mental abnormality" or "personality disorder" and whether he was likely to commit violent sexual acts in the future. During his testimony, Dr. Goldberg was asked to comment on an unadjudicated police report from Kent, Washington, in which a rape victim said an unknown assailant attacked her. The State asked Dr. Goldberg to assume the police report was about Hammond's rape, even though Dr. Goldberg lacked any certainty that the police report involved Hammond. Dr. Goldberg commented about the police report's significance to his opinion. But his opinion was the same with or without the police report. Although the jury did not unanimously agree he had a qualifying mental abnormality, it found that Hammond had a personality disorder and that he was an SVP. The court ordered Hammond committed into State custody.

Hammond appeals.

## ANALYSIS

The State may petition under chapter 71.09 RCW to commit someone indefinitely to a secure facility if it can prove beyond a reasonable doubt that person is an SVP.[2] An SVP is "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or

---

[2] RCW 71.09.030, .060(1).

3

personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility."[3]

Hammond requests vacation of the court's commitment order and remand for a new trial because he contends the court erroneously admitted the Kent police report, the court improperly instructed the jury, and the jury found him to be an SVP despite an absence of substantial evidence.

I. The Kent Police Report

We review decisions to admit evidence for abuse of discretion.[4] A court abuses its discretion where it acts for untenable reasons or bases its decision on untenable grounds.[5] A court abuses its discretion where it fails to follow an evidentiary rule's requirements.[6]

Before trial, the State moved to permit testimony from Dr. Goldberg about a police report describing an unsolved rape by an unknown assailant that occurred in Kent while Hammond lived there. Hammond objected and argued the report described a different rape than his and was hearsay not admissible by any exception. The court granted the motion for the limited purpose of informing or supporting Dr. Goldberg's opinion.

---

[3] RCW 71.09.020(18).

[4] In re Det. of Coe, 175 Wn.2d 482, 492, 286 P.3d 29 (2012) (citing State v. Foxhoven, 161 Wn.2d 168, 174, 163 P.3d 786 (2007)).

[5] Id. (quoting Foxhoven, 161 Wn.2d at 174).

[6] Foxhoven, 161 Wn.2d at 174 (citing State v. Neal, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001)).

Hearsay is inadmissible unless subject to an exception.[7] Police reports are generally hearsay because an officer subjectively recounts her investigation.[8] ER 703 permits testimony about otherwise inadmissible information where "an expert bases an opinion or inference" on a type of information reasonably relied upon by experts in that field.[9] But "[e]xperts should not act as funnels to allow lawyers to get into evidence through their expert opinion what is otherwise inadmissible."[10]

The parties do not dispute that psychological experts in SVP trials reasonably rely on criminal history and police reports,[11] so the issue is whether Dr. Goldberg's opinions at trial were genuinely based on the police report. The party seeking to introduce the expert testimony must show it complies with ER 703.[12]

In State v. Hamilton, the State sought to impeach an expert defense witness on cross-examination by asking questions about the defendant's medical

---

[7] ER 802.

[8] Coe, 175 Wn.2d at 505.

[9] Matter of Det. of Marshall, 156 Wn.2d 150, 161, 162, 125 P.3d 111 (2005); ER 703.

[10] Coe, 175 Wn.2d at 516 (Chambers, J. concurring); see Marshall, 156 Wn.2d at 162-63 ("However, 'it does not follow that such a witness may simply report such matters to the trier of fact: The Rule was not designed to enable a witness to summarize and reiterate all manner of inadmissible evidence.'") (internal quotation marks omitted) (quoting State v. DeVries, 149 Wn.2d 842, 848 n.2, 72 P.3d 748 (2003)).

[11] Appellant's Br. at 38; Resp't's Br. at 28.

[12] See State v. Hamilton, 196 Wn. App. 461, 478, 481, 383 P.3d 1062 (2016) ("[T]he party seeking to impeach an expert witness pursuant to ER 703 and ER 705 has the burden of demonstrating that the expert, in formulating his or her opinion, relied on the facts or data proffered by the impeaching party.").

records and the information in them.[13] The expert testified he had reviewed the records but had not relied on them because his ultimate opinion was not based on them.[14] As a result, this court held the information from the medical records was inadmissible under ER 703.[15]

Similarly, here, the State never established that Dr. Goldberg relied on the police report to form the basis of his opinion.[16] Dr. Goldberg testified the Kent police report impacted his opinion only if Hammond actually committed the crime described in it. But the report was unadjudicated, and the victim described an assailant with "some similarities [and] some differences" from Hammond, so Dr. Goldberg had no level of certainty that the report had anything to do with Hammond.[17] Dr. Goldberg also testified his opinions about Hammond would be unaffected if the police report was about someone else.[18] Because Dr. Goldberg could not rely on the report for information about Hammond's admitted rape and the report's accuracy had no bearing on his opinions, the State failed to establish Dr. Goldberg based his opinions on it. ER 703 was not an appropriate hearsay

---

[13] 196 Wn. App. 461, 467, 481, 383 P.3d 1062 (2016).

[14] Id.

[15] Id. at 474-75.

[16] The State seeks to distinguish Hamilton from the instant case because Dr. Goldberg testified on direct rather than being cross-examined. Resp't's Br. at 33-34. But the State offers no authority or explanation for the significance of this distinction, and none is apparent.

[17] RP (July 24, 2017) at 1307.

[18] Id. at 1308.

exception. Accordingly, the court abused its discretion by admitting inadmissible hearsay.[19]

"'[E]videntiary error will not be reversed absent a showing that the error prejudiced the defendant.'"[20] Errors are prejudicial if, "'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'"[21] This analysis is unrelated to whether sufficient evidence exists to find the person on trial is an SVP absent the inadmissible evidence.[22]

In Hamilton, this court concluded the defendant was prejudiced by the admission of inadmissible information and improper impeachment of his expert witness.[23] Because the jury would have had a duty to acquit had it believed the defense expert and the improper impeachment also undermined the defendant's affirmative defense, prejudice to the defendant resulted.[24] By contrast, in In re Detention of Mines, the court concluded an SVP was not prejudiced by the court's admission of evidence showing prior bad acts, even if erroneously admitted.[25] The Mines court concluded that admitting an information containing unproven

---

[19] Foxhoven, 161 Wn.2d at 174.

[20] Hamilton, 196 Wn. App. at 484 (alteration in original) (quoting Aubin v. Barton, 123 Wn. App. 592, 608, 98 P.3d 126 (2004)).

[21] Neal, 144 Wn.2d at 611 (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

[22] State v. Gower, 179 Wn.2d 851, 857, 321 P.3d 1178 (2014).

[23] 96 Wn. App. at 484-85.

[24] Id.

[25] 165 Wn. App. 112, 128, 266 P.3d 242 (2011).

charges against the SVP could not have prejudiced him because the SVP admitted to committing the crimes charged.[26]

Hammond argues the erroneous admission of the police report prejudiced him by undermining his credibility. According to Dr. Goldberg, if the police report describes Hammond's admitted rape, then it showed Hammond had a "pervasive" "desire for nonconsensual sex" because the date of the police report was within three weeks of him taking indecent liberties with a stranger.[27] In addition, the State used the Kent police report in conjunction with Hammond's admitted rape to contend he was aroused by nonconsensual sex, contrary to Hammond's testimony.[28]

However, Hammond admitted to committing a rape strikingly similar to the rape described in the Kent police report.[29] And Hammond's testimony allows that his admitted rape could have occurred in the same time period as the rape in the police report; within three weeks of him groping a stranger he followed off the bus.[30] Moreover, the State extensively impeached Hammond's credibility during

---

[26] Id.

[27] RP (July 24, 2017) at 1307.

[28] RP (Aug. 1, 2017) at 2085-86.

[29] Compare RP (July 24, 2017) at 1304-05 (Dr. Goldberg's account of the rape), with RP (July 26, 2017) at 1614-18 (Hammond testifying about his rape).

[30] RP (July 20, 2017) at 1047, 1052 (Hammond testifying he took indecent liberties while living in the community before going to North Dakota).

his testimony without relying on the police report.[31] Unlike Hamilton, the court's error neither undermined Hammond's expert nor restricted his ability to present his theory of the case. Because the jury learned the harsh details of Hammond's admitted rape from his own statements, as in Mines, and the State undermined his credibility apart from the erroneously admitted evidence, Hammond does not show prejudice resulted from improper admission of the police report.

## II. The Court Properly Instructed the Jury

We review jury instructions de novo for any errors of law and review a court's choice of jury instructions for abuse of discretion.[32]

"'Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law.'"[33] Jury instructions must be "manifestly clear" because the jury is not allowed to resolve ambiguous wording through interpretive tools.[34]

---

[31] E.g., RP (July 19, 2017) at 956-960; RP (July 26, 2017) at 1638 (asking Hammond about his history of lying to treatment providers and confronting him about past lies in his treatment records).

[32] State v. Stacy, 181 Wn. App. 553, 569, 326 P.3d 136 (2014); In re Det. of Alsteen, 159 Wn. App. 93, 99, 244 P.3d 991 (2010).

[33] Id. (internal quotation marks omitted) (quoting Keller v. City of Spokane, 146 Wn.2d 237, 249, 44 P.3d 845 (2002)).

[34] State v. Irons, 101 Wn. App. 544, 550, 4 P.3d 174 (2000) (quoting State v. LeFaber, 128 Wn.2d 896, 902, 913 P.2d 369 (1996)).

Hammond took exception to a jury instruction restating the entirety of Washington pattern jury instruction 365.14.[35] The instruction interprets the statutory third element for finding a person is an SVP, that the person is "likely to engage in predatory acts of sexual violence if not confined in a secure facility," as meaning "that the person more probably than not will engage in such acts if released unconditionally from detention in this proceeding."[36] Hammond proposed additional language defining "more probably than not" as "that there is more than a 50 [percent] likelihood that the person will engage in such acts."[37]

Hammond argues the court erred by rejecting his proposed clarifying language because it correctly stated the applicable law. He does not argue, however, that the trial court's instructions incorrectly stated the applicable law.

RCW 71.09.060(1) requires a jury to determine "whether or not the person [accused of being an SVP] would be likely to engage in predatory acts of sexual violence if not confined in a secure facility."[38] This third element to prove a person is an SVP "is 'a compound determination'" requiring the jury to find "'both causation (i.e., the abnormality or disorder causes the likelihood of future acts), and that the probability of the defendant's reoffending exceeds 50 percent.'"[39] In

---

[35] 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 365.14, at 578 (2012).

[36] Id.

[37] Clerk's Papers at 1224.

[38] See RCW 71.09.020(18) (defining "sexually violent predator").

[39] Matter of Det. of Harell, 5 Wn. App. 2d 357, 370, 426 P.3d 260 (2018) (internal quotation marks omitted) (quoting In re Det. of Post, 170 Wn.2d 302, 310, 241 P.3d 1234 (2010)).

other words, "[t]he State must prove not only that a crime occurred, but that the SVP continues to suffer from a mental abnormality [or personality disorder] and that he or she would likely reoffend if released from confinement."[40]

Neither the civil commitment statute nor the case law require Hammond's proposed language any more than they prohibit it. And Hammond still argued his defense, despite the rejection.[41] The court correctly instructed the jury on the applicable law and both parties argued their theory of the case.

The court rejected Hammond's proposal because it did not "want to confuse the standard of proof with statistics" in a "case [that] is much more number-driven than most."[42] Using several actuarial tools, both experts testified at length about the statistical likelihood of Hammond reoffending if released. For example, Dr. Goldberg testified that Hammond had a 42.2 percent chance of reoffense in five years, which meant he was more likely to reoffend than 99 percent of all sex offenders.[43] The court was concerned jurors in King County "are extremely mathematical, and they tend to translate almost any argument like this into the math that's familiar to them, which is usually not the math you're talking about[;] some of the jurors simply go amiss on what these measurements mean."[44]

---

[40] Matter of Det. of Belcher, 189 Wn.2d 280, 290, 399 P.3d 1179 (2017).

[41] RP (Aug. 1, 2017) at 2143-44 (arguing during closing, "So we have to find that Mr. Hammond is more likely than not to reoffend, and that's over the 50 percent mark. Most sex offenders reoffend at a rate of about 10 percent.").

[42] RP (July 13, 2017) at 439, 442.

[43] RP (July 25, 2017) at 1348-50.

[44] RP (July 5, 2017) at 116.

Because the court properly instructed the jury on the law and rejected Hammond's proposed instruction based on reasonable concerns, the court did not abuse its discretion.

### III. Sufficient Evidence Supported the Jury's Verdict

Sufficient evidence supports a jury finding that a person is an SVP where a rational trier of fact could, when viewing the evidence in a light most favorable to the State, find the essential elements were met beyond a reasonable doubt.[45]

The core of Hammond's sufficiency argument is that "[j]uries are not permitted to fashion their own diagnosis in SVP cases—expert testimony is required."[46] Hammond contends the jury took an unpermitted step because neither expert specifically testified he had a qualifying "personality disorder," only Dr. Goldberg testified Hammond had a qualifying mental abnormality, and the jury found Hammond had a qualifying personality disorder but not a mental abnormality.[47] But Hammond's argument misconstrues the roles of the jury and the experts.

Experts testify to "assist the trier of fact to understand the evidence or to determine a fact in issue."[48] Although an expert may opine on the ultimate legal issues in the case, those issues must "be decided by the trier of fact."[49] In an SVP

---

[45] In re Det. of Thorell, 149 Wn.2d 724, 744, 72 P.3d 708 (2003).

[46] Appellant's Br. at 20.

[47] Id. at 19-20.

[48] ER 702.

[49] ER 704.

trial, the jury must determine whether a person has a qualifying, statutory "mental abnormality" or a qualifying, statutory "personality disorder."[50] This legal determination is distinct from the expert's clinical diagnosis, and the latter does not mandate the former.[51] Unlike this court, the jury is free to evaluate the credibility of the experts and determine which portions of their testimony are most reliable.[52]

Here, the jury did not find Hammond has a "mental abnormality," so the question is whether sufficient evidence supported its finding that he has a "personality disorder."

A statutory "personality disorder" is "an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture, is pervasive and inflexible, has onset in adolescence or early adulthood, is stable over time and leads to distress or impairment."[53] Unlike "mental abnormality," this statutory definition happens to be the same as the clinical definition in the <u>Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition</u>

---

[50] RCW 71.09.020(18).

[51] <u>See</u> ER 704; <u>see, e.g.</u>, RP (July 17, 2017) at 495-96 (Dr. Phenix testifying "mental abnormality" "doesn't really come from psychological or psychiatric writings or definitions").

[52] <u>See</u> <u>State v. Cardenas-Flores</u>, 189 Wn.2d 243, 266, 401 P.3d 19 (2017) ("'Credibility determinations are for the trier of fact' and are not subject to review.") (quoting <u>State v. Camarillo</u>, 115 Wn.2d 60, 71, 794 P.2d 850 (1990)).

[53] RCW 71.09.020(9).

(DSM-V).[54] The DSM-V outlines a number of different personality disorders, including ASPD.[55]

Both experts diagnosed Hammond with ASPD.[56] Dr. Phenix described ASPD as "generally always associated with some type of criminality, violating the rights of others, being incarcerated, . . . a person who kind of ignores the rights of others and kind of takes and does what they want to do."[57] An ASPD diagnosis alone is "[a]bsolutely not" an indicator that a person would qualify as an SVP.[58]

Dr. Goldberg opined that Hammond satisfied the legal criteria for a mental abnormality or personality disorder because he experiences "a combination of [ASPD] and hypersexuality."[59] Hypersexuality presents as "a high degree of sexual drive which causes distress and dysfunction."[60] Dr. Goldberg explained that Hammond is "not concerned about violating others if he needs to be sexually gratified. . . . [H]is [ASPD] predisposes him to commit criminal sexual acts."[61]

Hammond's own testimony aligns with Dr. Goldberg's, and both are sufficient to support a legal finding that Hammond has a statutory "personality disorder." For Hammond, feelings of boredom, loneliness, or anger can trigger

---

[54] RP (July 17, 2017) at 509 (testimony of Dr. Phenix).

[55] Id.

[56] RP (July 17, 2017) at 500-01; RP (July 24, 2017) at 1274-75.

[57] RP (July 17, 2017) at 509.

[58] RP (July 24, 2017) at 1276 (testimony of Dr. Goldberg).

[59] Id. at 1233.

[60] Id. at 1287.

[61] Id. at 1277.

sexual behavior. Hammond said he felt "frustration" due to loneliness before "decid[ing] on the spot" to rape a stranger.[62] Until he saw his victim, Hammond "wasn't thinking about actually having sex with anybody or raping anybody."[63] Hammond thinks "something is wrong with me" because he "tend[s] to want to use sex as a coping skill," reacts impulsively to situations, struggles to control his anger, and has an overall lack of emotional control that "played a factor" in committing rape and indecent liberties.[64] Dr. Phenix also testified that Hammond "still [has] issues with anger management"[65] and dysfunctional coping skills that impair his ability to identify and solve problems.[66] Overall, the testimony from Hammond, Dr. Phenix, and Dr. Goldberg established that Hammond's ASPD diagnosis and strong sex drive resulted in his ongoing struggle to cope with ordinary feelings like boredom, anger, and loneliness, which could result in future acts of sexual violence.

Additionally, both experts testified about scientifically valid actuarial data from the Static-99R[67] showing with "moderate predictive accuracy" that Hammond has an absolute chance of 42.2 percent of reoffending within five years if

---

[62] RP (July 26, 2017) at 1617.

[63] Id.

[64] Id. at 1658-59.

[65] RP (July 17, 2017) at 597.

[66] Id. at 563.

[67] The Static-99R is a scientifically valid tool used to measure the statistical likelihood of future sex offenses, both violent and nonviolent, by convicted sex offenders. Id. at 543, 548-49 (testimony of Dr. Phenix).

released.[68] But Hammond has a 99 percent chance of reoffense following release when compared to other sex offenders.[69]

Given Dr. Goldberg's clinical diagnosis, Hammond's testimony, and the uncontested actuarial data, a rational fact-finder could conclude beyond a reasonable doubt that Hammond has a statutory "personality disorder" that makes him more likely to engage in predatory acts of sexual violence. The State demonstrated he had a pervasive and "enduring pattern of inner experience and behavior that deviates markedly from the expectations of [his] culture," which initially manifested when Hammond molested his siblings at 13, continued for years thereafter as evinced by him committing rape around age 18 and voyeurism at 21, and continues to impair Hammond's ability to function typically. Consequently, substantial evidence supports the jury's finding that Hammond has a statutory personality disorder that makes it likely he will engage in predatory acts of sexual violence if not confined.

Therefore, we affirm.

WE CONCUR:

---

[68] Id. at 550 (testimony of Dr. Phenix); RP (July 25, 2017) at 1348 (testimony of Dr. Goldberg).

[69] RP (July 25, 2017) at 1350 (testimony of Dr. Goldberg).