# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUL 18 2013

for CHIEF JUSTICE



This opinion was filed for record
at 8:00 am on July 18, 2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| Respondent, | ) ) ) | No. 87740-8 |
| v. | ) ) | En Banc |
| JOSH SANCHEZ, | ) ) ) | |
| Petitioner. | ) ) | Filed ___JUL 18 2013___. |
| | ) ) | |

WIGGINS, J.—When a juvenile sex offender is returned to the community, Washington law requires local authorities to determine the risk posed by the juvenile and to notify the community accordingly. Petitioner Josh Sanchez, a juvenile sex offender, argues that the legislature shifted risk determination from local law enforcement to a state committee within the Department of Corrections (DOC). For this reason, he argues that the superior court should not release his offender information to the King County Sheriff's Office. However, Sanchez misreads the statute: while the legislature did grant new authority to the DOC, it did so in *addition* to the prior authority granted to local law enforcement, thus imposing a parallel responsibility on both entities. We therefore hold that the juvenile court may properly release the evaluation of Sanchez that resulted in his receiving an alternative disposition for his sex offense.

Sanchez also contends that this disclosure to local law enforcement violates his constitutional and statutory rights to privacy. However, because the legislature had a rational basis for requiring its release to local law enforcement and because RCW 13.50.050 will prevent any subsequent public disclosure of his information, his right to privacy was not unduly curtailed.

## STATUTORY BACKGROUND

Sanchez's case is governed by two separate but related statutory schemes: statutes providing for alternative dispositions for juvenile sex offenders and statutes requiring public notice of a sex offender's release. A preliminary overview provides the background.

### A. Special sex offender disposition alternative (SSODA)

Juveniles facing a first-time conviction for certain sex offenses in Washington may seek a clement alternative to traditional sentencing called a special sex offender disposition alternative (SSODA). See RCW 13.40.162. If a juvenile is SSODA eligible, the court may order an evaluation to determine the offender's amenability to treatment. Id. At a minimum, this evaluation must include a description of the juvenile's offense history, psychological evaluation, social and educational history, employment situation, his or her version of the facts in the case, and proposed treatment terms. RCW 13.40.162(2)(a)(i)-(v), (b)(i)-(v). The court then considers whether this alternative sentence will benefit the offender and the community. RCW 13.40.162(3). The typical SSODA sentence includes two years of outpatient treatment under a probation officer's supervision. Id.

2

## B. Sex offender assessment and public notice

In 1990, the legislature first enacted present-day RCW 4.24.550, requiring local law enforcement to notify the public when a sex offender was released from confinement. LAWS OF 1990, ch. 3, § 117. The statute requires local officials to assess each sex offender and assign a risk level (I, II, or III, with III being the most likely to reoffend). This assessment then determines the nature and extent of public notice. However, because it placed responsibility for assigning risk levels solely under the purview of local law enforcement, the original scheme raised two concerns: first, that similarly situated offenders would receive disparate treatment across jurisdictions, and second, that local authorities would lack sufficient information to reach accurate decisions. H.B. REP. on Engrossed Substitute S.B. 5759, at 2, 55th Leg., Reg. Sess. (Wash. 1997).

The legislature addressed these concerns in Laws of 1997, chapter 364, which created a role for the State in the risk assessment process. These amendments established an end-of-sentence review committee (ESRC) under the DOC tasked with assessing the risk posed by newly released sex offenders. RCW 72.09.345(3), (5)(a). The amendments also required juvenile courts to "provide local law enforcement officials with all relevant information on offenders allowed to remain in the community in a timely manner." RCW 4.24.550(6). As we discuss in greater detail below, these amendments did nothing to displace local law enforcement's role. Rather, they established parallel authority for both the ESRC and local authorities in the risk assessment process.

C. *Juvenile sex offender notice and Substitute S.B. 5204*

Then, in 2011, the legislature passed Substitute S.B. 5204, which amended RCW 72.09.345 to add provisions pertaining to juveniles. *See* LAWS OF 2011, ch. 338, § 5. These required the ESRC to assess the public risk posed by juveniles convicted of a sex offense in addition to the prior requirements for sex offenders generally. *Id.* § 5(3). Thus, the legislature made clear that the ESRC's risk assessments and narrative notices would apply with equal force to both juvenile and adult sex offenders. However, Substitute S.B. 5204 did nothing to alter the duties that RCW 4.24.550 imposed on local law enforcement.

## FACTS

Thirteen-year-old Josh Sanchez pleaded guilty to one count of first degree child molestation in juvenile court. In lieu of a traditional sentence, he qualified for a SSODA that placed him on probation in a treatment center for two years.

In order to prevent the Department of Social and Health Services from using his SSODA evaluation in dependency proceedings, Sanchez moved under GR 15 to seal the evaluation. The King County Superior Court initially granted Sanchez's motion, but it vacated the order three days later after learning that SSODA evaluations are released to the King County Sheriff's Office as a routine part of the sheriff's office's duty to carry out a risk assessment. The court authorized the probation department to release Sanchez's SSODA evaluation to the sheriff's office, but stayed that disclosure to give the defense time to file a notice of appeal.

Sanchez appealed and moved for a stay of the trial court's order to release his SSODA evaluation. The Court of Appeals initially granted a temporary stay, but

ultimately denied the motion and lifted the stay. The Court of Appeals affirmed the trial court, and we granted review. *State v. Sanchez*, 169 Wn. App. 405, 279 P.3d 999, *review granted*, 175 Wn.2d 1023, 291 P.3d 253 (2012).

ANALYSIS

The meaning of a statute is a question of law reviewed de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002) (citing *State v. Breazeale*, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001); *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001)). The object of statutory interpretation is to ascertain and carry out the legislature's intent. *Id.*

This court looks to the plain and ordinary meaning of statutory language to determine legislative intent. In turn, we discern plain meaning from "all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Campbell & Gwinn*, 146 Wn.2d at 11. Additionally, if possible, we will construe a statute's language so as to find it constitutional. *City of Seattle v. Montana*, 129 Wn.2d 583, 589-90, 919 P.2d 1218 (1996).

I.   <u>RCW 4.24.550 provides for the release of SSODA evaluations to local law enforcement</u>

The statutory provisions governing sex offender risk assessment demonstrate the legislature's intent to create a cooperative intergovernmental system involving both state and local authorities.  The statutes require both the ESRC and local law enforcement to make parallel determinations based on the same information. But Sanchez argues otherwise: he contends that a SSODA evaluation is irrelevant to the

sheriff's office's assessment, and also that the legislature has now placed risk assessment solely under the purview of the DOC's end of sentence review committee (ESRC). However, the plain meaning of these statutes contradicts Sanchez's arguments.

A. *SSODA evaluations are "relevant information" within the meaning of RCW 4.24.550(6)*

RCW 4.24.550(6) requires the juvenile court to "provide local law enforcement officials with all relevant information on offenders allowed to remain in the community in a timely manner." This information then helps local officials make an informed risk assessment as required by RCW 4.24.550. Sanchez, however, argues that his SSODA evaluation is not "relevant information" within the statute's meaning.

While RCW 4.24.550(6) does not define "relevant," reading that provision in its broader statutory context clarifies the term's meaning. If a statute does not define its own terms, we may look to related statutes. And where possible, statutes should be read together to achieve a "'harmonious total statutory scheme . . . which maintains the integrity of the respective statutes.'" *State ex rel. Peninsula Neighborhood Ass'n v. Dep't of Transp.*, 142 Wn.2d 328, 342, 12 P.3d 134 (2000) (alteration in original) (internal quotation marks omitted) (quoting *Employco Pers. Servs., Inc., v. City of Seattle*, 117 Wn.2d 606, 614, 817 P.2d 1373 (1991)). As the related statute RCW 13.50.050(6) makes clear, the release of juvenile offense records "shall be governed by the rules of discovery and other rules of law applicable in adult criminal investigations and prosecutions." Reading these two provisions together, we conclude that the statutory scheme governing juvenile

offense records is best served by adopting the definition of relevance contained in the Washington Rules of Evidence. Therefore, information is relevant to a sex offender risk assessment if it has "any tendency to make the existence of any fact that is of consequence to the determination . . . more probable or less probable than it would be without the evidence." ER 401.

Under this definition, SSODA evaluations are indisputably relevant to a juvenile sex offender's risk assessment. An examiner conducting a SSODA evaluation and a law enforcement agency performing a risk assessment must address the same question: what risk does the offender pose to the community? *Compare* RCW 13.40.162(2)(b) ("The examiner shall assess and report regarding the respondent's amenability to treatment and relative risk to the community.") *with* RCW 4.24.550(6)(b) ("Local law enforcement agencies that disseminate information pursuant to this section shall . . . assign risk level classifications to all offenders about whom information will be disseminated . . . ."). As described above, a SSODA examiner considers a juvenile offender's social, educational, and employment situation as well as his or her offense history, alleged deviancy, and version of the case's facts. For law enforcement officials performing roughly the same assessment, the information compiled by a SSODA examiner is more than relevant; it is practically dispositive.

B. *Substitute S.B. 5204 did not divest local law enforcement of its RCW 4.24.550 authority*

Sanchez further argues that as of Substitute S.B. 5204's passage, only the ESRC and not the sheriff's office is authorized to conduct risk assessments. But the

legislation made no such change. The ESRC's authority to conduct sex offender risk assessments dates back to 1997 when the legislature created RCW 72.09.345, which both established the committee and assigned it that task. *See* RCW 72.09.345(2), (3); LAWS OF 1997, ch. 364, § 4. In Substitute S.B. 5204, the legislature merely amended RCW 72.09.345(3) to include juveniles amongst those sex offenders whom the ESRC was required to assess (*see* LAWS OF 2011, ch. 338, § 5(3)). The language that "local law enforcement agencies . . . shall . . . assign risk level classifications to all offenders about whom information will be disseminated" remains intact. RCW 4.24.550(6)(b).

The ESRC's inclusion in the risk assessment process was never intended to displace local law enforcement's role, but to better support and inform it. RCW 72.09.345(2) explicitly states that the purpose of the ESRC's risk assessments is "for public agencies to have the information necessary to notify the public as authorized in RCW 4.24.550 . . . ." To fulfill this purpose, the statute directs the ESRC to "issue to appropriate law enforcement agencies, for their use in making public notifications under RCW 4.24.550, narrative notices regarding the pending release of sex offenders from the department's facilities." RCW 72.09.345(7). A local authority is then required to *consider* the ESRC's risk assessment. RCW 4.24.550(6)(a). But they need not follow it: local officials may depart from the State's classification, so long as they give notice and explain their reasons for doing so. RCW 4.24.550(10). Therefore, contrary to Sanchez's view, the present statutory scheme grants the ESRC and local law enforcement concurrent authority to perform

sex offender risk assessments, and it provides for them to collaborate toward that end.

II. Releasing Sanchez's SSODA evaluation to the sheriff's office will not violate his privacy rights

Sanchez also argues that releasing his SSODA evaluation would violate his constitutional right to privacy, as well as his right to confidentiality under various state and federal statutes. A SSODA evaluation may contain sensitive, privileged, or embarrassing information, including details regarding a juvenile's social situation or alleged deviant behaviors. *See* RCW 13.40.162(2)(a). Therefore, indiscriminately releasing such an evaluation to the public, or to an agency without need or authority to review it, could raise legitimate privacy concerns. However, because the legislature had a rational basis for authorizing its release to local law enforcement and because the confidentiality statutes at issue allow for its release as required by law while prohibiting its disclosure to the public at large, Sanchez's rights are not violated here.

*A. Release of Sanchez's SSODA evaluation would not violate his constitutional right to privacy*

While Sanchez does enjoy a constitutional right to confidentiality, it is not without limits. The United States Supreme Court has recognized an individual's right to privacy under the federal constitution in two contexts: the right to make certain decisions without government intrusion (autonomy) and the right to prevent the disclosure of personal information (confidentiality). *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977). While this court has acknowledged an individual's interest in confidentiality, we have not recognized it as a fundamental

right under either the federal or state constitution. *O'Hartigan v. Dep't of Pers.*, 118 Wn.2d 111, 117, 821 P.2d 44 (1991). Rather, we apply a rational basis test: "disclosure of intimate information to governmental agencies is permissible if it is carefully tailored to meet a valid governmental interest, and provided the disclosure is no greater than is reasonably necessary." *Id.* (citing *Peninsula Counseling Ctr. v. Rahm,* 105 Wn.2d 929, 935, 719 P.2d 926 (1986)).

The legislature had a rational basis for authorizing the release of Sanchez's SSODA evaluation to the sheriff's office. The State has a legitimate interest in ensuring that local law enforcement is sufficiently well informed to make an accurate assessment of the risk posed by released sex offenders. *See* H.B. REP. on Engrossed Substitute S.B. 5759. And as we concluded above, a SSODA evaluation is highly relevant to this assessment. The sheriff's office requires this information for the same reason as does the SSODA examiner: to accurately assess the risk of whether the juvenile will reoffend in the future. Sanchez makes no credible argument that releasing his SSODA evaluation is a greater disclosure than is reasonably necessary to meet this need.

### B. Release of Sanchez's SSODA evaluation would not violate his statutory right to privacy

Sanchez also argues that releasing his SSODA evaluation to the sheriff's office would violate statutory controls on the disclosure of juvenile offense records. Washington classifies records pertaining to a juvenile's criminal offense into three categories: the official juvenile court file, which includes court filings, findings, orders, and the like; the "social file," which contains reports of the probation

counselor; and other miscellaneous records. RCW 13.50.010(1). While the official court file is open to the public unless sealed, RCW 13.50.050(2), all other juvenile offense records are generally confidential. RCW 13.50.050(3). Because it is essentially the SSODA examiner's report, Sanchez's SSODA evaluation is part of the social file and is therefore confidential.

However, RCW 13.50.050 provides for the disclosure of confidential juvenile offense records under certain circumstances. Specifically, these files may be released "as provided in this section, RCW 13.50.010, 13.40.215, and 4.24.550." RCW 13.50.050(3). As discussed above, RCW 4.24.550(6) requires juvenile courts to "provide local law enforcement officials with all relevant information on offenders," which includes SSODA evaluations, so that local officials can make an accurate risk assessment. In other words, RCW 13.50.050 makes an express exception for the release of SSODA evaluations to local law enforcement for the purpose of making sex offender risk assessments. Therefore, releasing Sanchez's evaluation to the sheriff's office does not violate the statute's confidentiality requirement.

   C. *Whether the sheriff's office may release Sanchez's SSODA evaluation is not an issue ripe for review*

Sanchez expresses concern that if his SSODA evaluation were released to the sheriff's office, it could subsequently be released to the public pursuant to the Public Records Act (PRA), chapter 42.56 RCW, thereby divulging sensitive and personal information. But as far as the record shows, no one has actually filed a PRA request for any information of Sanchez's. There is no need for us to consider

the merits of a purely hypothetical request for Sanchez's SSODA evaluation. Accordingly, we decline to reach the PRA issue at this time.

### D. Sanchez's SSODA evaluation is not protected as a medical record

Because his SSODA evaluation contains mental health reports, Sanchez contends that it is protected from disclosure to the sheriff's office by chapter 70.02 RCW and the federal Health Information Portability and Accountability Act of 1996 (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936. We disagree.

While it is certainly true that chapter 70.02 RCW and HIPAA protect mental health records, see RCW 70.02.010(5)(a); 42 U.S.C. § 1320d(4)(b), that protection is conditional. Chapter 70.02 RCW specifically provides for the release of health care information, without authorization by the patient, if "required by law." RCW 70.02.050(2)(b). Similarly, HIPAA permits the release of personally identifying medical information to law enforcement by court order. 45 C.F.R. § 164.512(f)(1)(ii)(A). Therefore, neither HIPAA nor chapter 70.02 RCW applies where a court, acting pursuant to statutory mandate (here, RCW 4.24.550), orders the release of medical information to law enforcement.

### E. Court rules do not prevent the release of Sanchez's SSODA evaluation

Finally, Sanchez cites the rules of discovery in support of his asserted privacy interest in the SSODA evaluation. He discusses CrR 4.7(d), which allows defendants to request discoverable information from the prosecuting attorney, and CrR 4.7(h)(3), which concerns the custody of materials used by the prosecution during trial. However, these rules do not purport to create a privacy right on the part of the defendant. Nor are they relevant to the present case; Sanchez is not requesting

12

information from the State, nor is the State holding information on Sanchez pending trial.

In his briefing, Sanchez also refers obliquely to GR 15, which sets out a general procedure for sealing, destroying, or redacting court records. However, to seal a record is "to protect [it] from examination *by the public* and unauthorized court personnel." GR 15(b)(4) (emphasis added). Therefore, even if the juvenile court ultimately orders his records sealed, this would not prevent their release to the sheriff's office. As with his contentions about RCW 13.50.050 (discussed above), Sanchez's argument again seems to conflate a release to local law enforcement with full public disclosure.[1]

## CONCLUSION

Neither the statutes governing maintenance and release of SSODA evaluations, nor the constitutional, statutory, or rule-based privacy concerns asserted by Sanchez, bar the release of his SSODA evaluation to local law enforcement officials. Rather, RCW 4.24.550 requires the juvenile court to provide the evaluation to local law enforcement to better inform their statutorily mandated risk assessment of sex offenders. For these reasons, we hold that the juvenile court may properly release Sanchez's SSODA evaluation to the sheriff's office. Accordingly, the Court of Appeals is affirmed.

---

[1] Sanchez also offers several policy arguments to discourage the release of SSODA evaluations to local law enforcement. However, because the statutory scheme at issue on this point is clear and unequivocal, we do not address those arguments. *See Duke v. Boyd*, 133 Wn.2d 80, 87, 942 P.2d 351 (1997).

13

No. 87740-8

_Wiggins, J._

WE CONCUR.

_Madsen, C.J._

_Owens, J._

_Fairhurst, J._

_J.M. Johnson_

_Stephens, J._

_González, J._

_Gordon McCloud, J._