FILED
COURT OF APPEALS
DIVISION II

2013 DEC -3 AM 9: 21

STATE OF WASHINGTON
BY
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| IN RE DETENTION OF: | No. 43153-0-II |
| JOE L. TODD, | |
| Appellant. | UNPUBLISHED OPINION |

HUNT, J. – Joe L. Todd appeals a trial court order civilly committing him as a sexually violent predator (SVP) under chapter 71.09 RCW following a bench trial. He argues that the evidence was insufficient to establish a recent overt act, a statutory prerequisite for a SVP commitment.[1] We disagree and affirm.

FACTS

I. BACKGROUND

A. Prior Juvenile and Adult Sex Offense History; Juvenile Sex Offender Treatment

In juvenile court in 1990, at 15 years of age, Joe L. Todd pleaded guilty to his first sex offense: indecent liberties with a four-year-old boy. Todd later admitted to having had sexual contact with the victim more than 20 times over a three-month period.

---

[1] Although Todd also assigns error to several findings of fact and conclusions of law, he does not present any argument related to these assignments of error beyond asserting that the State failed to prove a recent overt act. Accordingly, we limit our analysis to the recent overt act issue. RAP 10.3(a)(6). In so doing, we consider any unchallenged findings as verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

In July 1991, Todd had repeated sexual contact with an eight-year-old acquaintance and was adjudicated guilty of first degree child rape in juvenile court. He received sex offender treatment while in juvenile custody (20 months). After his release in 1994, Todd participated in a pre-polygraph interview during which he (1) admitted to having visited pornography stores; (2) having had contact with children at his church, which he attended to gain access to children "in a safe environment"; (3) "peeping" at children in public restrooms at various stores; (4) becoming aroused while holding a 16-month-old child at church; (5) having numerous sexual contacts with males at rest areas and a store bathroom; (6) masturbating to fantasies of children as he peeped on them in bathrooms; and (7) having fantasies involving the sexual abuse of children in public restrooms. 2A VRP at 272.

In 1997, then 22-year-old Todd was on his way to visit his mother for Christmas when he became aroused while in a public restroom and decided to go to an adult video store hoping to find an adult male sex partner. That all the stores were closed frustrated Todd. Later, at his mother's home, he sexually assaulted at least one child. Todd pleaded guilty to first degree child molestation and second degree assault stemming from this incident.

B. Adult Sex Offender Treatment Plan

While in adult prison for these 1998 convictions, Todd participated in a sex offender treatment program. In 2007, Todd completed a "Relapse Prevention Plan," in which he listed:

* four behaviors that he needed to avoid: (1) Playing with children; (2) wandering or walking round with no destination, (3) casual sex, and (4) isolating himself, *see* Ex 13 at 3;

* four situations he needed to avoid: (1) Having contact with minors, (2) using public restrooms unless they are one-person restrooms, (3) conflicts with his boss for missing work or school, and (4) overextending his personal resources or making too many commitments, *see* Ex. 13 at 3;

2

* five people he needed to avoid: (1) Minors, (2) victims, (3) "[p]eople on placement," (4) "people seeking casual sex," and (5) "[p]eople who have children," Ex. 13 at 3;

* four "[e]motional [c]ues" that would indicate that "something is going on" or was in a "risky situation" and that he should monitor "so as to prevent further sexual assaults": (1) Depression, (2) boredom, (3) sexual frustration, and (4) loneliness, Ex. 13 at 3; and

* six "ongoing risk factors for [his] sexual assault," in other words, his "triggers": (1) "Frustration—especially in area of fantasy and masturbation," (2) "[i]nteracting with children," (3) "[u]sing public restrooms," (4) "[l]ack of transparency," (5) "[e]ntitlement—feeling owed sex," and (6) "[c]oping with feeling left out." Ex. 13 at 5.

To deal with these factors, Todd proposed several "exits/tools," including that he use public restrooms *only* if they were single-person, rather than multi-person. Ex. 13 at 5. He further noted that among the "seemingly unimportant decisions" he might make that were high risk factors was not leaving restrooms if he became aroused or thought someone else might be aroused, and he identified a "[l]apse" as playing with children, going to public restrooms, walking without a destination, and having fantasies about children or anonymous sex. Ex. 13 at 7.

## C. Recent Conduct

After his release from prison into community supervision in February 2009, Todd was designated a level three sex offender.[2] In May 2009, Todd told his aftercare treatment specialist Mark Chapman, that he (Todd) had just entered a Target store bathroom and masturbated while signaling to strangers that he wanted sexual relations by "dropp[ing] his pants" and moving his

---

[2] Level three sex offenders are "the most likely to reoffend." *State v. Sanchez*, 177 Wn.2d 835, 840-41, 306 P.3d 935 (2013).

foot under the stall door.[3] 1B VRP at 183. Chapman and Todd's Community Corrections Officer (CCO) Anthony Shaver (1) recognized this behavior as part of Todd's offense cycle, a step that could lead him to reoffend; (2) decided to address this behavior as a "treatment issue"; and (3) imposed a supervision condition prohibiting Todd from entering into *any* restroom accessible to the public or minors and requiring him to use only locked single restrooms. 2A VRP at 347.

The next day, Todd reported suicidal thoughts and feelings of hopelessness, which Chapman believed indicated an elevated risk of reoffense. A few days later, Todd told Chapman that he (Todd) had inadvertently encountered several minors in a sporting goods store, that he had experienced feelings indicating he was becoming sexually excited, and that he had immediately left the store.

In June, Todd told Chapman that he (Todd) had gotten off a public bus after becoming sexually aroused when he noticed a teenage boy wearing pants that exposed the boy's underwear. In July, Todd disclosed to his therapy group that he had fantasized he was a young boy being sexual with an older man, that he had masturbated to that fantasy, and that he had realized the fantasy was "inappropriate." 1B VRP at 194. Later that July, Todd also disclosed that he had become aroused when he heard male children's voices on a public bus, so he bit his tongue to distract himself.[4] Todd also disclosed that he had gone to the adult movie section of a

---

[3] In a later deposition, Todd stated that he was aroused by the thought of having sexual contact with "the guy" who had gone into the next stall. 2A VRP at 257.

[4] Chapman believed that the only reason Todd would need to intervene by biting his tongue was if he thought it was a sexual "risk." 1B VRP at 196.

video store intending to find an adult with whom to have a sexual encounter.[5] Around that same time, Todd also admitted that he had been swimming in Salmon Creek, an area often used by young males and females. Todd became angry and argumentative when Shaver told him not to return to the area.

In October, Todd encountered some sexually explicit photographs on the internet while doing computer research at college for a paper on gay marriage.[6] Realizing that this behavior was wrong, he told Chapman that he would use only computers at another location that had appropriate content filters. Despite this, Todd again viewed sexually explicit material while using a computer at the college 16 days later.

In late November, Todd once again used the college computers to view sexually explicit materials, including the sites "Hairy Bears," which depicted older men, and "Barely Legal Boys," which depicted adult males portraying "young teen boys" performing sexually explicit acts.[7] Todd also admitted returning to a video store "with the intent to have sexual contact" with

---

[5] At some point, Todd had also reported that he had entered a video store, had noticed some sexually explicit material, had become aroused, and then had left the store and reported the incident to Chapman.

[6] One of Todd's supervision conditions prohibited him from viewing sexually explicit material. Todd testified at trial that he had inadvertently seen this sexually explicit material on the computer and that he had immediately logged off and contacted Chapman.

[7] 1B VRP at 201, 202, 204.

adult males, despite knowing it would be a violation of his community custody conditions.[8] 1B VRP at 206. Todd served 17 days in custody for this violation.[9]

In a later deposition, Todd admitted that he had sexual fantasies about men having sex with boys six times while he was in jail for his community custody violation. After his release from custody in December, Todd told Chapman that he found it difficult to control his urge to access pornography on the internet.

In early January 2010, Todd missed a group therapy session; Chapman asked him to come in for a "one-on-one to discuss some things." 1B VRP at 208. During this meeting, Todd admitted that he had gone to an adult video store and had had sexual contact with several men whom he did not know but who were approximately 10 years older than he was. Todd also admitted that he had again visited the "Barely Legal Boys" site. 1B VRP at 211.

Chapman spoke to Shaver; together they decided that Todd should be incarcerated for violating his community custody conditions because his "acting out sexually" was increasing and this "put[ ] him in that higher risk category." 1B VRP at 211. Shaver was concerned about Todd's viewing pornography, even though the "Barely Legal [Boys]" site purported not to show anyone under 18, "[b]ecause the risk behavior would still be there" if Todd was fantasizing or focusing on the fact that the participants *appeared* to be children. 2A VRP at 368. Todd was placed in custody for 200 days for this violation. Shaver also referred Todd for civil commitment as an SVP.

---

[8] Todd also told Chapman that his sexual arousal in response to minors was increasing.

[9] Todd lost his job due to this incarceration.

## II. SVP CIVIL COMMITMENT BENCH TRIAL

Todd waived his right to a jury, and the SVP civil commitment case proceeded to a bench trial. At trial, both Todd's and the State's experts agreed that Todd suffers from pedophilia, a mental disorder.

### A. State's Evidence

The State's witnesses included Chapman, Shaver, a treatment provider, polygraph examiners, and the State's psychologist Dr. Brian William Judd. The State also played several portions of Todd's June 2011 videotaped deposition.

#### 1. Todd's June 2011 Videotaped Deposition

In the deposition testimony played for the court, Todd identified several of his risk factors for reoffending against children, which included (1) getting depressed, (2) not setting adequate boundaries, (3) being around children, and (4) viewing pornography. He commented about why viewing pornography was a significant risk factor as follows:

> In my opinion, because I don't think it would be too difficult to keep digging further and find real child pornography. With the number—just finding the number I see even that portray adult men acting younger. I'm very certain it probably wouldn't have taken a whole lot more work to find something else that would have been child pornography, and that's a boundary I don't need to cross, because [. . .]. *If I ever allow myself just to think that children can ever be appropriate sexual partners, then I run the risk of reoffending.*

1B VRP at 164 (emphasis added).

Todd also explained an "offense cycle":

> [T]he offense cycle is identified as behaviors that, if left unchecked, will lead into a next step, a next step until a person offends. And then, there are steps after that a person tries to use to mitigate their offense in their mind. They are liable to continue repeating that chain of behavior.

2A VRP at 251-52.

Todd further stated that 30 percent of his sexual fantasies involve children and that these fantasies involved him touching the child's genitals. But he denied having masturbated to "any deviant, sexual fantasies in over a year" and asserted that the last time he had masturbated to such fantasies was while he was in jail in March or April 2010. 2A VRP at 254. He stated that he had allowed himself to masturbate to fantasies while in jail because he was "struggling with being locked up" and was "coping with" it sexually by masturbating. 2A VRP at 254-55. He admitted that he had difficulty controlling his sexual urges when he was out in the community, but he was not specific about whether this difficulty involved children.

Todd also admitted that in January 2010, he had told Chapman that he "had been doing pornography and that [he] had had sexual contact without permission"; but he stated that he had not given Chapman much detail because he knew he would be jailed for his violations. 3B VRP at 671. Todd further admitted that he had not told Chapman that he (Todd) had been fantasizing about the "guys that [he] looked at on Barely Legal Boys that looked younger." 3B VRP at 674.

### 2. Polygraph examiner

A polygraph examiner testified about Todd's January 2010 polygraph. During this test, Todd had (1) admitted to having accessed pornography that day on computers at WorkSource; (2) stated that he had been taken off his medication; (3) mentioned being more suicidal after losing his job and becoming depressed; and (4) stated that he had been feeling "more suicidal since he had started to look at pornography. 2A VRP at 310. According to the examiner, Todd had also mentioned looking at pornography depicting juvenile males engaging in sexual acts with adult males. When the examiner had asked Todd what was the most serious thing he had done since his last exam, Todd had responded, "'Child pornography.'" 2A VRP at 312. Todd

had also stated that he had had a fantasy about watching a male have sex with an 11 or 12-year-old child.

### 3. CCO and therapy providers

In addition to testifying about the facts set out above, Chapman testified that Todd's behavior in the Target bathroom was a risk factor for offending against "[a] minor, or anyone, anyone sexually," noting that Todd had himself identified this type of behavior as a risk factor when he was in treatment. 1B VRP at 183. Chapman also testified that even viewing adult pornography was risky for Todd because it objectified and sexualized people and would feed into Todd's sexual arousal and sexual behavior, "which is identified as a risk for him to reoffend against minors." 1B VRP at 201. Chapman testified that by November 2009, Todd was "starting to cross his own boundaries and boundaries that were created for him[, a]nd that [this] was a risk factor." 1B VRP at 206.

Shaver similarly testified that Todd's having casual sex in public bathrooms was "an identified risk pattern of that once he starts engaging in the casual sex then that leads to the possibility of offending against a child." 2A VRP at 335. In addition, one of Todd's group therapy facilitators, Scott W. Jones, testified that as recently as August 2011, Todd had admitted experiencing some arousal to the children in a Harry Potter movie.

### 4. Dr. Judd

Dr. Judd testified that in April 2010, he interviewed Todd and that Todd had stated (1) that "he experienced about 30 [percent] arousal to children"; and (2) "that he found the arousal to children was something that was distressing and he made every effort to substitute, if you will, adult males for children in an effort to curtail the behavior and his arousal to children." 2B VRP

at 449, 450. During this interview, Dr. Judd asked Todd if it was "safe to say that [he was] really struggling with [his] arousal both in custody and in the community during this period of time?" Todd responded, "'Yes. That was the reason I was looking for an age appropriate partner.'" 2B VRP at 461-62.

Dr. Judd testified that although Todd had identified in treatment several factors that placed him at high risk to offend and various interventions, "when it came time to fully implement[ ] these [the interventions], when he was in the community, it appeared that he was having progressive failures in terms of implementation." 2B VRP at 505. Dr. Judd specifically noted that Todd's going into a Target store restroom to seek anonymous sex placed Todd in a "high risk situation" that Todd himself had identified. 2B VRP at 505. Dr. Judd opined that (1) Todd's pornography viewing was also a risk factor; (2) Todd's viewing pornography depicting individuals who appeared underage was, "per [Todd's] admissions, reinforcing deviant patterns of arousal"; and (3) Todd was increasingly engaging in behavior he knew to be "high risk," "demonstrating progressive slippage throughout the time he was in the community beginning on [May 12, 2009]." 2B VRP at 506.

Dr. Judd also testified about Todd's offense cycle. He stated an offender's offense cycle is based on behavior chains that led up to prior offenses and that these behaviors can indicate when an offender is "escalating into either a hands on or a non-contact offense of some sort." 3A VRP at 517. When the chain of behaviors is identified, it provides a "basis [of] treatment insofar as treatment will focus on disrupting [the] chain or intervening in those factors, which were associated with prior offending." 3A VRP at 517-18. Dr. Judd concluded that Todd's

behaviors that had started in 2009 created a reasonable apprehension that Todd was in his offense cycle while under supervision in the community. Specifically, Dr. Judd testified:

> [I]t appears that his offense cycle is one that would be initially . . . triggered . . . by feelings of loneliness, isolation, boredom, maybe depression, anxiety. And these serve as sort of distal stimuli, if you will, for triggering a cycle. So, in other words, these are emotions that he may encounter, which typically, in the past, for Mr. Todd has led into a pattern of sexualized coping in some fashion or another. Either through anonymous sex, through peeping, through voyeurism, maybe some exhibition—exhibitionism. And, that these factors lead into his attempt to cope with these feelings, with these emotions, with these experiences, leads into this particular pattern of conduct and behavior, which can escalate into committing offenses against children or it can remain simply within a sexually compulsive pattern entailing non-criminal behavior with adult males.

3A VRP at 522. Although Dr. Judd stated that Todd could have responded to the offense cycle by engaging in sex with adults, Todd's repeated viewing of images that depicted people who looked like young boys engaging in sex was concerning because "this was clearly reinforcing [Todd's] deviant arousal" and was not merely a way of "coping with urges." 3A VRP at 530; 4 VRP at 921.

### B. Todd's Witnesses

Todd called two witnesses: treatment provider Michelle Klink, and himself. Klink testified about what an offender cycle was. She stated that in treatment, an offender would identify the cycle that precipitated his offenses, identify what "would put them at risk for acting out sexually," and identify how he had justified his behavior in the past so he would be aware of his vulnerabilities. 3A VRP at 636. Klink opined that Todd's behaviors since May 2009 indicated he "was actually in cycle." 3A VRP at 642. And she believed that Todd was possibly "more vulnerable to acting out sexually," but not necessarily "reoffending." 3A VRP at 643.

11

Todd denied accessing any actual child pornography sites or telling anyone he had looked at such sites.

The trial court found that in viewing pornography sites, fantasizing about sexual situations involving children, becoming aroused to children in public, entering public restrooms to masturbate and seek sexual relationships with strangers, and frequenting video stores to seek and to engage in anonymous sex with strangers, all of which related to Todd's offense cycle, Todd had committed a recent overt act. Based on these findings, the trial court entered an order committing Todd as an SVP. Todd appeals.

## ANALYSIS

Todd argues that the trial court erred in finding that he had committed a recent overt act. We disagree.

### I. STANDARD OF REVIEW

Criminal standards apply to our review of a trial court's SVP determination. *In re Det. of Thorell*, 149 Wn.2d 724, 744, 72 P.3d 708 (2003), *cert. denied*, 541 U.S. 990 (2004). Accordingly, we review challenges to the trial court's findings of fact and conclusions of law by determining (1) whether substantial evidence supports the challenged findings, and (2) whether those findings in turn support the trial court's conclusions. *State v. Madarash*, 116 Wn. App. 500, 509, 66 P.3d 682 (2003) (citing *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997)). "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding." *Madarash*, 116 Wn. App. at 509 (citing *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999), *abrogated on other grounds by Brendlin v. California*, 511 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007)). We consider the evidence in the light most

favorable to the State and treat unchallenged findings of fact as verities on appeal. *Madarash*, 116 Wn. App. at 509. If the record contains conflicting testimony, we will not disturb the trier of fact's credibility and weight determinations. *Madarash*, 116 Wn. App. at 509.

## II. SVP DEFINITIONS

To commit Todd under RCW 71.09.060(1), the State had to prove beyond a reasonable doubt that he was an SVP. RCW 71.09.020(18) defines an SVP as "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder [that] makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility."

> "Likely to engage in predatory acts of sexual violence if not confined in a secure facility," means that the person more probably than not will engage in such acts if released unconditionally from detention on the sexually violent predator petition. Such likelihood *must be evidenced by a recent overt act* if the person is not totally confined at the time the petition is filed under RCW 71.09.030.

RCW 71.09.020(7) (emphasis added). And a "'[r]ecent overt act'"

> means any act, threat, or combination thereof that has either caused harm of a sexually violent nature or *creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act or behaviors.*

RCW 71.09.020(12) (emphasis added).

## III. SUFFICIENT EVIDENCE OF RECENT OVERT ACT

Todd does not dispute that the evidence established the requisite prior conviction or that he suffers from a mental abnormality or personality disorder for SVP civil commitment purposes under RCW 71.09.020(18) and RCW 71.09.060(1). He argues only that there was insufficient

evidence to establish the statutorily required recent overt act[10] and that *In re Det. of Aston*, 161 Wn. App. 824, 251 P.3d 917 (2011), *review denied*, 173 Wn.2d 1031 (2012), and *In re Det. of Broten*, 130 Wn. App. 326, 122 P.3d 942 (2005), *review denied*, 158 Wn.2d 1010 (2006), do not support the trial court's recent overt act finding here. We disagree.

The evidence here clearly supports the trial court's finding that Todd committed a recent overt act; and neither *Aston* nor *Broten* require that an offender have contact with children or utter a direct threat before the State can establish a recent overt act or reasonable apprehension of harm; therefore, Todd's argument fails. As noted above, "'[r]ecent over act' means any act, threat, or combination thereof that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows" Todd's history and mental condition. RCW 71.09.020(12). Because there was no evidence that Todd made any threats or caused any harm of a sexually violent nature, we address only whether the State proved that he had engaged in acts that created a reasonable apprehension of harm given his history and mental condition.

Engaging in high risk behavior that is part of the individual's offense cycle can be sufficient to establish a recent overt act, even if there is no actual contact with any potential victim. *See Broten*, 130 Wn. App. at 335-36. Here, there was evidence that Todd (1) was still

---

[10] RCW 71.09.060(1).

14

sexually aroused by children, at least to some extent[11]; (2) was actively seeking out pornography depicting individuals who appeared to be children engaging in sexual acts; and (3) most importantly, was engaging in behaviors that he himself had identified as risky, such as frequenting public restrooms to seek sexual gratification, frequenting video stores for sexual purposes, engaging in anonymous sex, fantasizing about children in sexual situations, and sometimes masturbating to those fantasies. Todd himself had identified much of this behavior as part of his offense cycle. And Chapman, Shaver, and Dr. Judd all testified that they believed Todd's behavior suggested that he was at a risk to reoffend.

Todd also admitted that (1) in an effort to escape being violated and incarcerated, he had sometimes failed to disclose the details of his behavior; (2) he was currently under a great deal of stress having recently lost his job; and (3) his sexual attraction to minors was increasing. Many of these factors were items he had self-identified as increasing his risk of reoffense and as part of his offense cycle.

We hold that this evidence was sufficient to support the trial court's finding (given Todd's history and mental condition) that Todd's continuing to engage in behaviors he recognized as having led to his past acts of sexual violence, despite knowing that these behaviors also violated his supervision conditions, was an overt act that created a reasonable apprehension that he would cause harm of a sexually violent nature. Although Todd now has a better understanding of his sexual identity, in the past he has turned to children when his attempts to

---

[11] Although we consider Todd's continuing and apparently increasing arousal to children, we do not mean to imply that such arousal itself is an overt act. Instead, we consider this factor because it is relevant to Todd's offense cycle, which, in turn, is relevant to whether a reasonable person knowing Todd's history and mental condition would consider that his repeatedly placing himself in situations he had identified as risky amounted to a recent overt act.

find a consenting adult with whom to engage in sexual relations were thwarted. His willingness to engage in acts prohibited under his supervision conditions, which he had also self-identified as parts of his offense cycle, combined with his continued and increasing sexual attraction to children, support the trial court's overt act finding.

Todd argues that unlike in *Aston*, he never made any type of threat to engage in predatory acts of violence.[12] He also argues that unlike in *Broten*,[13] he did not date anyone who put him in

---

[12] In *Aston*, Division One of our court held that the State had presented sufficient evidence of a recent overt act when it established that the respondent had told his CCOs that (1) he would reoffend given the opportunity; (2) he had written about and masturbated to deviant sexual fantasies about children; (3) he had purchased a book with "a sexual theme of an adult male having mind control over a minor, naked female; and (4) he had masturbated to fantasies about child actors as he watched children's movies. *Aston*, 161 Wn. App. at 830-33. In addition, a psychologist testified that Aston suffered from pedophilia and that writing fantasies was part of his offense cycle:

[The psychologist] summarized his opinion as follows:

[T]raditionally, it appears that there's been a three-step process for Mr. Aston: The first being sexually deviant fantasies, and then targeting individuals in the community, actual individuals, and then offending. And certainly, from the standpoint that he was in treatment, he was under supervision, he was told not to be writing these kinds of fantasies, these pornographic fantasies involving children, he had met the—if you will, the first step. I mean, he wasn't able to go online to actually pull down the pornography as he had before, but he was generating his own.

Second is, we have at least two reports of him visually targeting individuals in the community, girls that were in his preferred victim range, which is 4 to 9 years of age, and experiencing arousal to that, which he reported on various interviews. So from my standpoint, it strikes me that he was having difficulty controlling his sexual urges at this point in time. And that the next logical step, based upon what we know of his prior history, is that he would have offended. [Report of Proceedings (Oct. 5, 2009) at 647-48.]

[The psychologist] explained that Aston's written fantasies were concerning because he wasn't just a passive recipient of them. He was actively

---

16

direct contact with a minor or make weekly visits to parks to masturbate to visions of his intended future victims. Instead, Todd asserts that he sought out consensual sex with homosexual men and that he never "act[ed]" on his arousal or what he saw by engaging in contact with children, despite that (1) his movements around the city may have taken him to

---

generating them and spending a lot of effort writing them down. He concluded that, based on these acts, Aston is 'likely to engage in predatory acts of sexual violence if not confined to a secure facility.'

*Aston*, 161 Wn. App. at 833-834 (some alterations in original).

Division One held that (1) Aston's comment that he would reoffend was sufficient evidence of a "threat"; and (2) there was sufficient evidence that Aston had committed an "act," noting the fantasies Aston had written combined with his comment that he would reoffend if given the opportunity. *Aston*, 161 Wn. App. at 834-35. The court commented that this case was similar to *Broten*, in which Broten's behavior was considered part of his "'offense cycle,' or a 'buildup . . . in anticipation of [re]offending.'" *Aston*, 161 Wn. App. at 835 (quoting *Broten*, 130 Wn. App. at 333). Ultimately, the court held that the threat, the act, and the psychologist's testimony about Aston's writing fantasies as part of his "offense cycle" were sufficient to support the SVP finding. *Aston*, 161 Wn. App. at 835-36. Analogizing to our decision in *Broten*, Division One held that the evidence was sufficient, stating,

> In addition to the acts and threat described above, [the psychologist] testified that Aston suffers from pedophilia and that writing fantasies is part of his 'offense cycle.' This was sufficient evidence for the jury to find that Aston's behavior created a reasonable apprehension of sexually violent harm in the mind of an objective person who knows of his history and mental condition.

*Aston*, 161 Wn. App. at 835-36.

[13] In *Broten*, we held that "Broten's act of being in a park at a children's playground without a chaperone was sufficient evidence that he committed a recent overt act supporting the jury's finding that he is [an SVP]." *Broten*, 130 Wn. App. at 329. The psychologist testified that Broten's presence in the park, mental history, numerous release violations, and pattern of deceptiveness, constituted a recent overt act because Broten "was actively engaging in 'deviant arousal that he [was] not intervening on' and he was 'now placing himself in high risk situations where minors would reasonably be expected to congregate.'" *Broten*, 130 Wn. App. at 332-33. We held that Broten's being in the park without a chaperone and without a legitimate reason for being there, "taken together with Broten's mental history, numerous release violations, admission of fantasizing about molesting and raping young girls, and pattern of placing himself in high-risk situations in anticipation of causing sexually violent harm, constituted a recent overt act." *Broten*, 130 Wn. App. at 336.

locations where minors might be, (2) he might have inadvertently been aroused by minors at times, and (3) he may have "viewed some gay-oriented website with what appeared to be young teens performing sex acts." Br. of Appellant at 15. *Aston* and *Broten* do not support Todd's argument.

To prove an overt act in *Broten* and *Aston*, neither we nor Division One *required* the offender to have made any overt threats or to have physically placed himself in the proximity of children. Rather, these cases merely considered such threats and actions as *factors* in determining whether there was a reasonable apprehension that the offender would cause harm of a sexually violent nature. As stated above, we hold that Todd's behaviors here, particularly when he had identified for himself these behaviors as part of his risk cycle, were clearly sufficient to support the trial court's finding of a recent overt act, which in turn supported its finding that Todd is an SVP.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Hunt, J.

We concur:

_____
Worswick, C.J.

_____
Johanson, J.