FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 DEC 23 AM 8: 47

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| AMALGAMATED TRANSIT UNION LOCAL NO. 1576, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS DISTRICT 160, and LANCE NORTON, | ) ) ) ) ) ) | NO. 69641-6-I<br><br>DIVISION ONE |
| Appellants, | ) ) | |
| v. | ) ) | |
| SNOHOMISH COUNTY PUBLIC TRANSPORTATION BENEFIT AREA, d/b/a COMMUNITY TRANSIT, | ) ) ) ) ) | PUBLISHED OPINION |
| Respondent. | ) ) | FILED: December 23, 2013 |

LEACH, C.J. — Amalgamated Transit Union Local No. 1576, International Association of Machinists and Aerospace Workers District 160, and Lance Norton (collectively Amalgamated) appeal the trial court's grant of summary judgment to the Snohomish County Public Transportation Benefit Area, d/b/a Community Transit. Amalgamated seeks a judgment declaring a provision of Community Transit's bylaws void. Amalgamated contends that this provision conflicts with RCW 36.57A.050 because it prohibits a nonvoting board member from attending any board executive session held to discuss personnel matters. Because the bylaws prohibit what the state law requires by removing the board

chair's discretion to determine when the nonvoting member can attend these executive sessions, we reverse and remand to the trial court for entry of judgment in favor of Amalgamated.

## FACTS

Community Transit is a public transportation benefit area created to provide regional transportation services to a portion of Snohomish County.[1] The bylaws of this municipal corporation establish a board of directors to serve as its legislative authority. Until 2010, nine elected officials selected by the component cities and Snohomish County comprised this board.

In 2010, the Washington Legislature amended RCW 36.57A.050 to add a nonvoting member to public transportation benefit area legislative authorities.[2] The amendments granted to certain labor organizations authority to recommend this new member. A Community Transit representative provided testimony to the legislature opposing these amendments.

The current version of RCW 36.57A.050 states,

> The nonvoting member is recommended by the labor organization representing the public transportation employees within the local public transportation system. If the public transportation employees are represented by more than one labor organization, all such labor organizations shall select the nonvoting member by majority vote. The nonvoting member shall comply with all governing bylaws and policies of the authority. The chair or cochairs of the authority shall

---

[1] See RCW 36.57A.010(7), .050.
[2] LAWS OF 2010, ch. 278, § 3.

exclude the nonvoting member from attending any executive session held for the purpose of discussing negotiations with labor organizations. The chair or cochairs may exclude the nonvoting member from attending any other executive session.

Amalgamated Transit Union Local No. 1576 and International Association of Machinists and Aerospace Workers District 160 represent certain Community Transit employees. In August 2010, these unions recommended Lance Norton as the nonvoting member of Community Transit's governing board.

Community Transit's governing board conducts monthly meetings. These include a public portion and may include a closed executive session. On September 1, 2011, the board amended its bylaws. Section 3.3(c) of the amended bylaws states,

> The Chairperson or the Acting Chairperson shall exclude the nonvoting member of the Board from attending any executive session held for the purpose of discussing negotiations with labor organizations or matters relating to the personnel of Community Transit. The Chairperson or the Acting Chairperson may allow the nonvoting member to attend an executive session if he or she finds that the attendance by the nonvoting member at the executive session would be in the best interest of the Corporation or not be detrimental to its operations. The decision of the Chairperson or Acting Chairperson shall be final and binding. If the non-voting [sic] member attends an executive session of the Board of Directors, such non-voting [sic] member shall not disclose any information obtained in such executive session to anyone and shall not use such information to further the interest, either directly or indirectly, of any collective bargaining unit or employee(s) of the Corporation.

On October 27, 2011, Amalgamated sued Community Transit, seeking a declaratory judgment voiding section 3.3(c) of the amended bylaws because it

conflicts with RCW 36.57A.050. In October 2012, the parties submitted cross motions for summary judgment.[3] The trial court granted Community Transit's motion for summary judgment and denied Amalgamated's motion for summary judgment.

Amalgamated appeals.

## STANDARD OF REVIEW

We review de novo a trial court's order granting summary judgment.[4] When reviewing a summary judgment order, we view all of the evidence in the light most favorable to the nonmoving party.[5] "Summary judgment is appropriate 'if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'"[6] We also review issues of statutory interpretation de novo.[7]

## ANALYSIS

We must decide two issues: (1) does Amalgamated have standing to challenge Community Transit's bylaws and (2) does the challenged bylaw conflict

---

[3] The record does not include these motions.

[4] Columbia Cmty. Bank v. Newman Park, LLC, 177 Wn.2d 566, 573, 304 P.3d 472 (2013) (citing Mohr v. Grantham, 172 Wn.2d 844, 859, 262 P.3d 490 (2011)).

[5] Columbia Cmty. Bank, 177 Wn.2d at 573 (citing Mohr, 172 Wn.2d at 859).

[6] Columbia Cmty. Bank, 177 Wn.2d at 573 (alterations in original) (quoting CR 56(c)).

[7] State v. Sanchez, 177 Wn.2d 835, 842, 306 P.3d 935 (2013) (citing Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)).

irreconcilably with RCW 36.57A.050. We conclude that Amalgamated has standing and the challenged bylaw is void.

We address the standing issue first. The Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, states, "A person . . . whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."[8] To have standing, a plaintiff "must have some protectable interest that has been invaded or is about to be invaded."[9] "'Standing requirements tend to overlap the requirements for justiciability under the UDJA.'"[10]

We apply a two-part test to determine if a party has standing under the UDJA.[11] "'First, a party must be within the zone of interests to be protected or regulated by the statute in question. Second, the party must have suffered an

---

[8] RCW 7.24.020.

[9] Orion Corp. v. State, 103 Wn.2d 441, 455, 693 P.2d 1369 (1985) (citing Vovos v. Grant, 87 Wn.2d 697, 699, 555 P.2d 1343 (1976); State ex rel. Hays v. Wilson, 17 Wn.2d 670, 672-73, 137 P.2d 105 (1943)).

[10] City of Longview v. Wallin, 174 Wn. App. 763, 778, 301 P.3d 45 (quoting Am. Legion Post No. 149 v. Dep't of Health, 164 Wn.2d 570, 593, 192 P.3d 306 (2008)), review denied, 178 Wn.2d 1020 (2013).

[11] Wallin, 174 Wn. App. at 778 (citing Am. Legion Post No. 149, 164 Wn.2d at 593).

injury in fact.'"[12] The party seeking standing must establish both parts of this test.[13] To establish injury under the UDJA, a party must allege "harm personal to the party" that is "substantial rather than speculative or abstract."[14]

Community Transit does not contest that Amalgamated meets the first prong of the test but claims that Amalgamated did not suffer an injury in fact. It alleges, "[Amalgamated] cannot point to a single executive session where the nonvoting member was unlawfully excluded. Thus, any alleged 'injury' is purely speculative." Community Transit asserts that because the bylaws limit the chair's discretion, "[o]nly the board chair, not [Amalgamated], has any possible standing to complain."

The record contains no evidence about the purpose for any specific executive session, but Norton testified by declaration, "Since I began serving on the Board, I have been excluded from every executive session except one, which addressed a potential real estate purchase. I have never participated in an executive session pertaining to personnel matters. I am the only Board member who is excluded from these executive sessions."

---

[12] Wallin, 174 Wn. App. at 778 (internal quotation marks omitted) (quoting Am. Legion Post No. 149, 164 Wn.2d at 593-94).

[13] Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 150 Wn.2d 791, 802, 83 P.3d 419 (2004).

[14] Grant County Fire Prot. Dist. No. 5, 150 Wn.2d at 802 (citing Walker v. Munro, 124 Wn.2d 402, 411, 879 P.2d 920 (1994)).

Although the record does not disclose if the board excluded Norton because of the amendment to its bylaws, we hold that Amalgamated has standing to sue. We agree with Amalgamated that a qualitative difference exists between an absolute bar to attendance at executive sessions addressing personnel matters and a right to attend those sessions subject to the chair's discretionary right of exclusion. By statute, Norton had the right to have the chair decide on a session-specific basis if Norton could attend an executive session addressing personnel matters other than negotiations with labor organizations. The unions recommending Norton had a similar right with respect to their chosen representative. The bylaws eliminated these rights.

The bylaws impose upon the board the obligation to hire, supervise, and evaluate Community Transit's chief executive officer. Presumably, the board will hold future executive sessions to discuss these and other personnel matters. Even if it did not do so between the time that the board amended its bylaws and the time that Amalgamated brought this action, the bylaws will undoubtedly result in Norton's automatic exclusion from these executive sessions in the future. Amalgamated will not receive the benefit of the chair's exercise of discretion about attendance.

We next address the merits of the parties' claims. Amalgamated contends that section 3.3(c) of Community Transit's governing board's bylaws conflicts

irreconcilably with RCW 36.57A.050 and is void. Community Transit claims that if section 3.3(c) of the board's bylaws conflicts with RCW 36.57A.050, we should invalidate the statute on equal protection grounds. We agree with Amalgamated that the bylaw provision conflicts with RCW 36.57A.050 and find Community Transit's arguments unpersuasive.

Amalgamated asserts, "The text of RCW 36.57A.050 is clear on its face and does not require construction." Amalgamated claims,

> RCW 36.57A.050 creates a narrow prohibition on the nonvoting labor representative's participation in executive sessions: the nonvoting member is prohibited only from attending executive sessions pertaining to negotiations with labor organizations. In sharp contrast to Section 3.3(c) of the Community Transit bylaws, RCW 36.57A.050 gives the Board's Chair discretion to permit the nonvoting labor representative to attend executive sessions pertaining to all other topics, including those related to personnel matters. By eliminating that discretion—and with it the possibility that the nonvoting labor representative could participate in executive sessions addressing personnel matters—the Community Transit bylaws create an irreconcilable conflict with state law.

We interpret a statute to carry out the legislature's intent.[15] To determine legislative intent, we look to the "plain and ordinary meaning of statutory language."[16] We determine the plain meaning from "'all that the Legislature has

---

[15] Sanchez, 177 Wn.2d at 842 (citing Campbell & Gwinn, 146 Wn.2d at 9).
[16] Sanchez, 177 Wn.2d at 842.

said in the statute and related statutes which disclose legislative intent about the provision in question."[17]

A municipal corporation is "'a body politic established by law as an agency of the state—partly to assist in the civil government of the country, but chiefly to regulate and administer the local and internal affairs of the incorporated city, town, or district.'"[18] State legislation preempts a local regulation when the state legislature intends to preempt the field or manifests this intent from necessary implication.[19] We will not interpret a statute to "deprive a municipality of the power to legislate on particular subjects unless that clearly is the legislative intent."[20] A local regulation conflicts with a statute and the two provisions cannot coexist when the local regulation "permits what is forbidden by state law or

---

[17] Sanchez, 177 Wn.2d at 843 (quoting Campbell & Gwinn, 146 Wn.2d at 11).

[18] HTK Mgmt., LLC v. Seattle Popular Monorail Auth., 155 Wn.2d 612, 627-28, 121 P.3d 1166 (2005) (quoting Lauterbach v. City of Centralia, 49 Wn.2d 550, 554, 304 P.2d 656 (1956)).

[19] HJS Dev., Inc. v. Pierce County ex rel. Dep't of Planning & Land Servs., 148 Wn.2d 451, 477, 61 P.3d 1141 (2003) (citing Rabon v. City of Seattle, 135 Wn.2d 278, 289, 957 P.2d 621 (1998); Brown v. City of Yakima, 116 Wn.2d 556, 560, 807 P.2d 353 (1991)).

[20] Southwick, Inc. v. City of Lacey, 58 Wn. App. 886, 891-92, 795 P.2d 712 (1990) (citing State ex rel. Schillberg v. Everett Dist. Justice Court, 92 Wn.2d 106, 108, 594 P.2d 448 (1979)).

prohibits what state law permits.'"[21]  No conflict exists "if the provisions can be harmonized."[22]

The minute entry from the trial court's summary judgment hearing states, "THE COURT NOTES THAT THE CHAIR HAVING DISCRETION ON A CASE-BY-CASE BASIS IN PERSONNEL MATTERS IS HIGHLY PROBLEMATIC; AND WOULD LEAD TO CHARGES OF ARBITRARINESS; THERE IS NO WAY TO MAKE A DISTINCTION OF WHO CAN PARTICIPATE." Amalgamated argues that the court "erroneously equated discretion with arbitrariness" because "[a] public officer can certainly exercise discretion without acting arbitrarily and capriciously." It concedes that the board has the authority to "give the Chair some guidance regarding how to decide whether or not to include the nonvoting member in an executive session" but claims that the board "cannot eliminate that discretion without running afoul of state law." Amalgamated contends, "In contrast, it is the Community Transit Board that acted arbitrarily when it made the decision to categorically exclude the nonvoting member from all executive sessions addressing personnel matters without regard to the issues to be addressed or the circumstances of the executive session in question."

---

[21] Parkland Light & Water Co. v. Tacoma-Pierce County Bd. of Health, 151 Wn.2d 428, 433, 90 P.3d 37 (2004) (quoting HJS, 148 Wn.2d at 482).
[22] Parkland Light & Water Co., 151 Wn.2d at 433 (citing HJS, 148 Wn.2d at 482).

Amalgamated compares this case to Entertainment Industry Coalition v. Tacoma-Pierce County Health Department[23] and Parkland Light & Water Co. v. Tacoma-Pierce County Board of Health.[24] In Entertainment Industry Coalition, a state statute permitted business owners and lessees to designate public smoking areas in certain circumstances and places, but a local resolution prohibited smoking in all indoor public locations.[25] The court held that the resolution conflicted irreconcilably with the state statute and was invalid, reasoning, "The resolution, by imposing a complete smoking ban, prohibits what is permitted by state law: the ability of certain business owners and lessees to designate smoking and nonsmoking locations in their establishments."[26]

In Parkland Light & Water, a state statute granted authority to water districts to decide whether to fluoridate their water systems.[27] The court held that a local resolution requiring certain water purveyors to fluoridate their water was invalid because it "prohibits what state law permits: the ability of water districts to regulate the content and supply of their water systems expressly granted to them by statute."[28]

---

[23] 153 Wn.2d 657, 105 P.3d 985 (2005).
[24] 151 Wn.2d 428, 90 P.3d 37 (2004).
[25] Entm't Indus. Coal., 153 Wn.2d at 661-63.
[26] Entm't Indus. Coal., 153 Wn.2d at 664.
[27] Parkland Light & Water, 151 Wn.2d at 432.
[28] Parkland Light & Water, 151 Wn.2d at 433.

Here, RCW 36.57A.050 grants certain authority to the board's chair and certain rights to the nonvoting board member and those recommending him. The chair's authority includes discretion to exclude the nonvoting board member from attending executive sessions not held for the purpose of discussing negotiations with labor organizations. This means that state law grants the chair discretion to exclude the nonvoting member from attending executive sessions held for the purpose of discussing personnel matters. This authority is limited by the chair's obligation to refrain from arbitrary and capricious decisions. The nonvoting member has the right to be evaluated by the chair as an appropriate participant in these executive sessions. By prohibiting the nonvoting member from attending all executive sessions held for the purpose of discussing "matters relating to the personnel of Community Transit," the bylaw provision eliminates this exercise of authority and the corresponding right that the statute provides.

Amalgamated cites legislative history indicating the legislature's intent to "'include somebody from the people that are actually working on a day-to-day basis with the customers, and seeing the problems, so that they can have an equal voice with regard to the services that [a transit board] provides.'" We disagree with the trial court's determination that granting the chair discretion in personnel matters would lead to arbitrary decisions.[29] The chair can and must

---

[29] We note that under Washington law, "'[f]ailure to exercise discretion is an abuse of discretion.'" In re Det. of Mines, 165 Wn. App. 112, 125, 266 P.3d

consider on a case-by-case basis the appropriateness of the nonvoting member's participation in personnel matters addressed in executive session.

Community Transit points out that RCW 36.57A.050 requires the nonvoting member to "comply with all governing bylaws and policies of the authority." But this does not mean that the bylaws can eliminate the authority of the chair or the rights of nonvoting member/labor organizations granted by statute. Community Transit's argument would allow the board to eliminate all rights of the nonvoting member by bylaw. Therefore, we hold that section 3.3(c) of the Community Transit governing board's bylaws conflicts with RCW 36.57A.050 and is invalid.

Finally, Community Transit claims that if we conclude the bylaws conflict with RCW 36.57A.050, we should invalidate the statute as unconstitutional under the equal protection clause of the Fourteenth Amendment to the United States Constitution. Community Transit argues that the law "arbitrarily elevates the position of 'chair' above other board members in conflict with the remaining provisions of RCW 36.57A and sets up two separate classes of board members." Community Transit's argument ignores its own bylaws and the practical procedural needs of a legislative body. Its bylaws grant special authority to the chair to preside at all board meetings, to act as board spokesperson, and to act

242 (2011) (alteration in original) (quoting Bowcutt v. Delta N. Star Corp., 95 Wn. App. 311, 320, 976 P.2d 643 (1999)), review denied, 173 Wn.2d 1032 (2012).

-13-

as its representative at meetings of other organizations, committees, and authorized activities. We have difficulty envisioning the successful operation of a legislative body where no one has authority to set an agenda, recognize the order of speakers, or supervise vote taking. We find Community Transit's premise that all board members have equal authority on all procedural matters untenable. We reject its constitutional contention without further analysis.

## CONCLUSION

Because Amalgamated shows that section 3.3(c) of Community Transit's bylaws conflicts irreconcilably with RCW 36.57A.050, we reverse and remand for entry of summary judgment in favor of Amalgamated consistent with this opinion.

_Leach, C. J._

WE CONCUR: